BILL PETREA v. THE STATE.

No. 7611. Decided April 4, 1923.

1.—Selling Intoxicating Liquor—Indictment—Vinous and Malt Liquor—Legislative Intent.

Taking the two sections together of the amendment of the Dean law of the Thirty-seventh Legislature, there can be no doubt that the Legislature

intended the first section to prohibit the sale of all intoxicating liquors as well as medicated bitters capable of producing intoxication, and in the second section to prohibit the sale of such liquors or medicated bitters containing in excess of one per cent. of alcohol by volume, regardless of whether or not it was capable of producing intoxication.—Following Travino v. State, 92 Texas Crim. Rep., 140.

### 2.—Same—Newly Discovered Evidence.

Where the indictment alleged that defendant sold the liquor to three certain parties named in the indictment on August 15, 1922, and defendant in his motion for a new trial on account of newly discovered evidence alleged that in fact the only time defendant ever saw together the three parties named as the purchasers, was at his home some time during the month of March, and that he delivered or sold no whisky, etc., and that defendant brought himself clearly within the statute, and the alleged evidence will completely destroy the State's case, a new trial should have been granted.

Appeal from the District Court of Hopkins. Tried below before the Hon. Geo. B. Hall.

. Appeal from a conviction of selling intoxicating liquor penalty, one year imprisonment in the county jail.

*Allen, Sellers & Beasley* for appellant.—Cited Estell v. State, 240 S. W. Rep., 913. .

. *R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for the sale of intoxicating liquor with punishment assessed at one year confinement in the penitentiary.

The indictment alleges the sale of spirituous, vinous and malt liquor capable of producing intoxication. Appellant attacks the indictment on the ground that Section 1 of Chapter 61, (amendment of the Dean Law) 1st and 2d Called Sessions of the Thirty-seventh Legislature, page 233, does not embrace spirituous, vinous and malt liquors "capable of producing intoxication," but that the portion of the statute quoted relates only to medicated bitters capable of producing intoxication. We can not agree with appellant's contention in this regard. If we should be controlled alone by the location of punctuation marks the section might be subject to the interpretation placed upon it, but we think, taking the two sections together, there can be no doubt that the Legislature intended the first section to prohibit the sale of all intoxicating liquors, as well as medicated bitters capable of producing intoxication, and in the second section to prohibit the sale of such liquors or medicated bitters containing in excess of one per cent. alcohol by volume, regardless of whether or not it was capable of producing intoxication. Travino v. State, 92 Tex. Crim. Rep., 140, 242 S. W. Rep., 242.

The indictment alleges that appellant sold the liquor to Less Dickens, Roy Pickens and Alto Pickens on August 15th, 1922. In his

motion for new trial for alleged newly discovered evidence appellant avers that while the indictment alleged the sale as of date August 15th, 1922, that in fact the only time appellant ever saw together the three parties named as the purchasers was at his home some time during the month of March. It is shown by affidavit of one of his attorneys that in an effort to ascertain the facts upon which the state would rely he talked to one of the alleged purchasers prior to the time of the trial, who declined to give him any information whatever about it, and advised him it would be useless to see the other co-purchasers as they would not talk to him either; that preparing for trial as best he could, and assuming the purchasers would fix the occasion of the purchase as of the time they were at his house, regardless of the date in the indictment, he had present as witnesses two ladies who were at his house at the time in question waiting upon his wife, who at that time had a young baby only four days old. The first witness used by the state fixed the date as about August 15, as alleged in the indictment, but also testified that he and his co-purchasers were never together at appellant's house except one time. The state rested its case in chief on the testimony of this one witness. In rebuttal the other two alleged purchasers fixed the date as the 24th day of March, corresponding with the testimony of appellant and his witnesses. It may be said that both the witnesses for the State and appellant finally agreed that the actual date of the transaction was March 24th, some fixing it in one way and some another. It is also shown that on this day school closed in the neighborhood. The purchasers testified that they stopped at appellant's house for the purpose of making inquiry about a dog which one of them had lost; that appellant came out to their car and during the conversation agreed to sell them the liquor and was to deliver it at the "cross roads" as they returned. The "cross roads" was some two hundred yards from appellant's house. The state's witnesses further testified that they left appellants house going in search of their dog, passed the point of delivery, and were gone about twenty minutes when they came back to the "cross roads" and there appellant did meet them and delivered the whisky for which they paid. By the sworn statement of appellant to his motion for new trial and also by affidavit of his attorney it is shown that in no way were they advised or could ascertain that the state's witnesses would claim the "cross roads" as the point of delivery until after they had so testified upon the trial; that after conviction it was ascertained by appellant through his father (appellant being at the time in jail) that two witnesses, Doc Bunch and Preston Morgan, upon the afternoon of the day in question were at the house of one Howard Brand, which is situated near the intersection of the roads in question and that these witnesses would testify that no such transaction as that testified to by the state's witnesses occurred. The affidavits of these witnesses were secured and attached to the

motion for new trial. The time fixed by them is the date of the closing of the school, and the circumstances set out in their affidavits leaves no doubt as to its being the same date upon which the state's witnesses claimed to have purchased the whisky. These two witnesses saw, and one recognized, the three alleged purchasers at the time they stopped at appellant's house; saw them leave there and return in about twenty minutes, and on both trips saw them pass the intersection of the roads where they claimed to have stopped and received the whisky. Both witnesses assert positively in their affidavits that no such transaction occurred; that the three state's witnesses were traveling in a car and that they never stopped at the cross roads either as they went from Petrea's house or as they came back later; that from where they were located on the gallery of Brand's house there was no obstruction between them and the intersection of the roads, nor between them and Petrea's house; that if any such transaction had occurred they could, and would have seen it.

It is seldom a case is presented where newly discovered evidence as ground for a new trial is urged that the defendant brings himself so clearly within the statute (Art. 837, subdiv. 6, C. C. P.) as is done by appellant in the instant case. The testimony of appellant, his wife and the neighbor ladies who were at his house upon the occasion in question negatives the fact that he delivered any intoxicating liquor to the state's witnesses at the house, and appellant denies positively the transaction as testified to by the boys as occurring at the "cross roads." The ladies who were at his house did not see the State's witnesses as they came back and passed the "cross roads," and could only testify that to their knowledge appellant never left the house of the afternoon in question. Appellant now offers the affidavits of two witnesses who will testify positively that they were in a position to see and did see, the state's witnesses on that occasion and at that point as they came back; that they did not stop and neither did appellant meet them. If their evidence should be believed by the jury, it would completely destroy the State's case as made in the record before us. We do not regard it as merely impeaching or cumulative testimony, but it goes to the very foundation of the State's case, as made by the three alleged purchasers.

Believing the learned trial judge fell into error in not having granted a new trial to give appellant an opportunity to present said evidence to the jury upon another trial, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*