NEWT MAHANEY v. THE STATE.

No. 7190.   Decided June 13, 1923.

Rehearing denied October 17, 1923.

1.—Assault to Murder—Evidence—Bill of Exceptions.

Upon trial of assault with intent to murder, there was no error in permitting the State's witness to exhibit to the jury the wounds inflicted upon him by the defendant during the encounter, in the absence of showing in the bill of exceptions the conditions which rendered them inadmissible. Following Hunt v. State, 250 S. W. Rep., 168.

2.—Same—Evidence—Clothes.

Where the bill complaining that the clothes worn by the State's witness at the time of the encounter were contained in a grip and brought into the courtroom, is qualified by the trial court in such a manner as to render the complaint of it untenable, there is no reversible error.

3.—Same—Evidence—Previous Difficulty—Conversation.

Where, upon trial of assault to murder, the previous difficulty was referred to by the leading State's witness as a little spat taking place some eighteen months previously, that defendant had it in for him ever since, the defendant should have been allowed to describe the previous difficulty in his own way to show that he was not in the wrong, as part of the conversation and transaction. Following Williams v. State, 231 S. W. Rep., 112.

4.—Same—Conduct by Trial Judge—Charge of Court.

Where, upon trial of assault with intent to murder, the court, just before the jury retired for lunch, verbally instructed them as follows: "Gentlemen of the Jury, you must not separate and you must stay together, the Court of Criminal Appeals has held that you must stay together, and unless you do the court will have to give a new trial," the same is reversible error. Following Johnson v. State, 149 S. W. Rep., 160.

5.—Same—Rehearing.

Where appellant again complained, in his motion for rehearing, at the admission of the evidence that the State's witness was cut by defendant in the difficulty which formed the foundation of this prosecution, and was permitted to exhibit the cut in the shirt and the scar of the wound in his body, held, in the absence of a bill of exception, showing that the testimony was not material, there was no reversible error.

Appeal from the District Court of Eastland: Tried below before the Honorable E. A. Hill.

Appeal from a conviction of assault with intent to murder; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Barker & Barker,* and *J. Lee Cearley,* for appellant.—On question of intent to kill, Wakefield v. State, 94 S. W. Rep., 1046; Lasater v. State, 227 id., 948.

On question of refusing defendant's testimony of former difficulty, Burnett v. State, 201 S. W. Rep., 409; Morris v. State, 129 id., 1118; Shaw v. State, 165 id., 930; Chapman v. State, 66 Texas Crim. Rep., 489; Newman v. State, 213 S. W. Rep., 651.

On question of court's remarks, McMahan v. State, 135 S. W. Rep., 558; Hughes v. State, 197 id., 216.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for assault with intent to murder; punishment fixed at confinement in the penitentiary for a period of four years.

This is a synopsis of the State's case: Starkey, the injured party, and appellant had known each other for about three years. Both were operators of service cars. About eighteen months prior to the present occasion, a difficulty had taken place between them, since which time they had not been on friendly terms. On the day that the alleged assault took place, Starkey and the witness Nolley were together. Nolley called the appellant and said to Starkey: "You can ask Mahaney what you want." Starkey said: "Newt, I brought Nolley over here to tell you he never slapped my jaws." A wordy altercation took place, but the parties were separated. Later they met and a fight took place. It came about thus: Nolley told Starkey that he didn't tell anybody that he had slapped his jaws, but that he could do it, and drew back like he was going to hit him. Nolley drew his gun and the witness Marchman ran in and caught Nolley's arm. Appellant then entered the fight and cut Starkey a number of times with a knife. During the melee Starkey hit the appellant several times. According to Nolley's testimony, after the first interview had taken place, Starkey approached Nolley, and after using insulting language, struck him, rendering him almost blind. Nolley drew his pistol to use as a bludgeon when Marchman interfered and caught hold of his arms. Nolley was in a feeble condition due to a previous affray and did not know of appellant's entry into the affray.

This is appellant's version as revealed by his testimony: On the day of the encounter, he was advised to watch Starkey as he had a gun. Appellant informed officer Looney of the matter and later was called by Sheriff Nolley to an interview with Starkey, when the latter accused appellant of telling lies about Nolley slapping his jaws and used towards him other insulting language. Nolley prevented a fight and the parties separated. Later appellant observed Nolley, Starkey and Marchman engaging in a struggle, the beginning of which he did not see. He saw two men holding a pistol when he grabbed Starkey to pull him loose. Starkey then struck the appellant in the face and knocked him to his knees and attempted to "stomp" him when he cut him in the leg with his knife. Starkey pressed the fight upon the appellant who defended himself with his knife. He denied having threatened to kill Starkey at any time.

Other witnesses described the encounter in a manner coinciding, in a general way, with the description given of it by Starkey. This is true of Marchman, who said that Nolley struck Starkey and began the fight; that Nolley then pulled his gun and said that he would kill Starkey. The witness ran between them and took hold of Nolley's hand. Appellant ran in and cut Starkey on his arm and breast and then cut the witness. Starkey hit the appellant, and then Nolley hit Starkey with his gun.

In bill of exceptions No. 5 complaint is made of the ruling of the court which permitted the witness Starkey to exhibit to the jury the wounds inflicted upon him by the appellant during the encounter. We note in the bill that the wounds are not described further than that the witness, with reference to one of them, said: "This is drawn up and is about half as long as it was." Referring to the wound on his breast, the witness said that it was inflicted after he had been knocked down by Nolley. Appellant cites Newman v. State, 85 Texas Crim. Rep., 556, 213 S. W. Rep., 651; Chapman v. State, 66 Texas Crim. Rep., 489; Graves v. State, 59 Texas Crim. Rep., 42. In Newman's case, supra, the court, in holding that there was no occasion for exhibiting the scars, said:

"These scars were of such a nature as to indicate that the wounds were severe and very uncomely in appearance. They are described and made to appear in the record as being of an ugly nature. . . . If there had been a question to be solved by the exhibition of these wounds, we would have had a different proposition, but there was none. Concededly and without question these wounds were testified to have been in the back, and all the details of the testimony were given as to how they occurred and the manner in which they did occur."

In the Graves case, supra, the evidence of the wounds was excluded because their character had been changed by an operation. In Chapman's case, supra, the wound was inflicted by a gun shot. There was no question but that the weapon used in that case was a deadly one. The law does not interdict the exhibition of wounds but limits their receipt to occasions when they tend to solve some controverted issue. Wharton's Crim. Evidence, Vol. 2, Sec. 518b. In Mayes v. State, 100 S. W. Rep., 386,—a case of assault with intent to murder—the exhibition of the wounds was held ·proper. In the recent case of Hunt v. State, 94 Texas Crim. Rep., 151, 250 S. W. Rep., 168, in which the evidence of assault with intent to murder was held insufficient, attention was drawn to the fact that it was incumbent upon the State to prove that a deadly weapon was used. The knife was not described. In that case it was held that in the absence of a description of the knife or the wound, there was not sufficient evidence to justify the inference that the weapon used was a deadly one. It being permissible under some circumstances to exhibit wounds to the jury,- it was incumbent upon the appellant in the instant case to show, by bill of exceptions, the conditions which rendered them inadmissible. The bill, in our opinion, is not of that character.

The bill complaining that the clothes worn by Starkey at the time of the encounter were contained in a grip and brought into the courtroom is qualified by the trial court in such a manner as

to render the complaint of it untenable.  According to the bill, the grip was brought into the courtroom and opened and the clothes offered in evidence.  The court sustained the objection to them and instructed the jury that the fact that they had been offered in evidence or brought into the court-room could not be considered.  He further stated that the jury could not see the clothes except slightly at the top.

In Starkey's evidence, the previous difficulty was not otherwise described than as a "little spat" taking place some eighteen months antecedent to the date of the present encounter.  Starkey said, however, that following this previous difficulty the appellant had "had it in for him" and lost no opportunity to endeavor to thwart Starkey in the conduct of his business.  This version of the previous affair was calculated to leave upon the minds of the jury the impression that the appellant was in the wrong and that his subsequent behavior was due to jealousy of Starkey's business success as a competitor of the appellant and to imply malice therefrom.  Appellant sought to describe the previous difficulty in these words:

"That the prosecuting witness, about two and one-half years ago accused this defendant of cutting the price of jitney fares; that both parties are in the transfer business in the city of Cisco; that when the prosecuting witness called this defendant a liar and told him that he was a damn liar, that he knew that he had cut prices.  The defendant denied that he had done so and the prosecuting witness, L. J. Starkey, made an attempt to assault Mahaney; that defendant was a deputy sheriff on said date and when the prosecuting witness attempted said assault, defendant drew his gun and stopped the prosecuting witness in his act."

The trial court held this immaterial and irrelevant and refused to receive it in evidence.  In the statute it is said:

"When part of an act . . . or conversation . . . is given in evidence by one party, the whole on the same subject may be inquired into by the other."  (Code of Crim. Proc., Art. 811.)

Many decisions of this court are found in Vernon's Texas Crim. Stat., Vol. 2, page 759 and 611, indicative of the construction given this statute.  Many of these are cited in Williams v. State, 89 Texas Crim. Rep., 334, 231 S. W. Rep., 112.  The State having put in evidence Starkey's view of the former difficulty, the right of the appellant to give his version seems obvious.  The evidence of the incidents of the present difficulty and immediately preceding it is conflicting.  All controverted facts have been decided against the appellant.  The indictment upon which he was charged embraced not only the offense of assault with intent to murder but included that of aggravated assault.  The jury selected not only the highest grade of the offense, but assessed against him double the minimum

penalty. To what extent the jury was influenced by the unfavorable light in which the appellant was put with reference to the previous difficulty and how they might have viewed it if appellant had been permitted to explain the circumstances under which it took place are matters which cannot be definitely ascertained. It is clear, however, that in rejecting the appellant's testimony, upon the subject of the previous difficulty, an error was committed by the learned trial judge.

Just before the jury retired for lunch, the court verbally gave to them this instruction: "Gentlemen of the Jury: You must not separate and you must stay together. The court of Criminal Appeals has held that you must stay together, and unless you do, the court will have to give a new trial."

An exception was reserved to this at the time. Complaint is made that this instruction was violative of the statute which prohibits the trial judge, "at any stage of the proceedings, previous to the return of the verdict, from making any remark calculated to convey to the jury his opinion of the case." The statute, Art. 740, C. C. P. forbids any verbal instructions in a felony case. Art. 787, C. C. P. forbids any remark by the trial court, verbal or written, which conveys to the jury his opinion of the case. The inhibition against a verbal charge is not violated by a verbal admonition to the jury to the effect that the law forbids a separation before verdict. It is feared that in the instant case the learned trial judge, in admonishing the jury, made an unhappy choice of language. One with the intelligence and information which is supposed to characterize a juror acceptable to both the State and appellant would know that it was only in case of a verdict of guilty that a new trial could be granted. The remark of the court that if they separated he would have to grant a new trial, was at lest susceptible of the interpretation by the jury that, in the opinion of the court, the verdict would be "guilty." In giving effect to the statutory provisions which have just been mentioned, the court has found much difficulty in deciding when remarks in a given case were prejudicial. It has often been held that the remarks of the court, while not proper, were not prejudicial. See English v. State, 85 Texas Crim. Rep., 450; Vernon's Crim. Stat., Vol. 2, page 693, and cases cited. Verbal remarks, however, have frequently been held prejudicial. See Kelly v. State, 33 Texas Crim. Rep. 31; Price v. State, 35 Texas Crim. Rep., 501; McCullar v. State, 36 Texas Crim. Rep., 213; Yates v. State, 68 Texas Crim. Rep., 437, 152 S. W. Rep., 1064. In another case on the subject, this language was used:

"Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of

the issues involved. The delicacy of the situation in which he is placed requires that he be alert in his communications with the jury not only to avoid impressing them with any view that he has, but to avoid in his manner and speech things that they may so interpret. Kirk v. State, 35 Texas Crim. Rep. 224; Crook v. State, 27 Texas Crim. App. 198; Anderson v. State, 83 Texas Crim. Rep. 261, 202 S. W. Rep., 946.'' (Lagrone v. State, 84 Texas Crim. Rep., 615.)

The particular language used to admonish the jury in this instance was held erroneous in Johnson's case, 149 S. W. Rep. 160. It is made clear to the mind of the court that on the trial of the case, in the exclusion of evidence and in the terms used in admonishing the jury, error was committed. Whether the error was prejudicial to the appellant is a matter of uncertainty.

The evidence being conflicting, the punishment above the minimum, the commission of error certain, and the result questionable, we are constrained to resolve the doubt in favor of the accused. It is therefore ordered that the judgment be reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

October 17, 1923.

LATTIMORE, JUDGE.—In a motion for rehearing appellant asks that we pass upon the admissibility of the testimony of one Marchman who stated, over the objection of appellant, that he was cut by appellant in the difficulty which formed the foundation for this prosecution, and was permitted to exhibit the cut in his shirt and the scar of the wound in his body. An examination of the bill of exceptions complaining of the admission of this testimony fails to show that it was not pertinent testimony. There could be many ways in which the introduction of this testimony could serve to solve issues in the case. We would not be willing to hold it error for the court below to have permitted such evidence to go before the jury, unless it be shown in the bill of exceptions that the facts and issues were such as that the evidence was not illustrative of any material issue in the case.

The motion for rehearing will be overruled.

*Overruled.*