WESTBROOK *v.* McDONALD.

Opinion delivered November 23, 1931.

J. W. Westbrook and J. S. Utley, for petitioners.

Hal L. Norwood, Attorney General, and Walter L. Pope, for respondent.

Geo. P. Whittington, E. H. Wootton, S. W. Garratt and A. T. Davies, for protestants.

C. Floyd Huff, amicus curiae.

Smith, J. J. W. Westbrook, for himself, and on behalf of all other petitioners herein referred to, has

prayed this court to award the issuance of a writ of mandamus, directed to Ed F. McDonald, as Secretary of State of the State of Arkansas, requiring that officer to receive and file certain petitions praying that an act to amend § 3505, Crawford & Moses' Digest, passed at the 1931 session of the General Assembly, be referred to a vote of the people at the next ensuing general election, under the authority of the seventh amendment to the State Constitution adopted in 1920. Applegate's Constitution of Arkansas, Annotated, page 203.

The complaint praying this relief, which was filed June 27, 1931 alleges compliance with the amendment and with act No. 2 of the extraordinary session of the General Assembly in 1911, approved June 30, 1911. General Acts 1911, p. 582.

The petitions were lodged in the office of the Secretary of State on June 9 and 10, 1931, but the Secretary of State refused to indorse them as having been filed, because, in his opinion, under the advice of the Attorney General of the State, there had not been a substantial compliance with the Constitution and laws of the State in the particulars hereinafter discussed.

The act in question here sought to be referred to a vote of the people appears as act 71, and was approved by the Governor February 26, 1931, (Acts 1931, page 201). It reads as follows:

"Act 71.

"An act to amend § 3505 of Crawford & Moses' Digest of the statutes of the State of Arkansas.

"Be it enacted by the General Assembly of the State of Arkansas:

"That § 3505 of Crawford & Moses' Digest of the statutes of the State of Arkansas be and the same is hereby amended so as to read as follows, to-wit:

"The plaintiff, to obtain a divorce, must prove, but need not allege, in addition to a legal cause of divorce:

"First: A residence in the State for three months next before the final judgment granting a divorce in the action, and a residence for two months next before the commencement of the action.

"Second. That the cause of divorce occurred or existed in this State, or, if out of the State, that it was a legal cause of divorce in this State, the laws of this State to govern exclusively and independently of the laws of any other State as to the cause of divorce.

"Third. That the cause of divorce occurred or existed within five years next before the commencement of the suit.

"Fourth. If any provision of this act be declared unconstitutional, the validity of the remainder of the act shall not be affected thereby.

"Approved: February 26, 1931."

The petitions are all identical in form, and contain the following caption:

"PETITION FOR REFERENDUM

"To the Honorable Ed F. McDonald, Secretary of State of the State of Arkansas.

"We, the undersigned, legal voters of the State of Arkansas, respectfully order, by this, our petition, that act No. 80 of the General Assembly of the State of Arkansas, approved on the second day of March, 1931, entitled, 'An act to amend section 3505 of Crawford & Moses' Digest of the statutes of the State of Arkansas,' also known as the 'Divorce Bill of 1931,' and being an act to permit the granting of divorces after a residence in the State for three months next before final judgment granting divorce in the action and a residence of two months next before the commencement of the action, be referred to the people of the State of Arkansas, to the end that the same may be approved or rejected by the vote of the legal voters of the State at the biennial regular general election to be held Tuesday, the 8th day of November, 1932; and each of us for himself says:

"I have personally signed this petition; that I am a qualified elector of the State of Arkansas, and my residence, postoffice address, county and voting precinct are correctly written after my name.

| Name | Residence | P. O. Address |
|------|-----------|---------------|
|      |           |               |

| County | Voting Precinct |
|--------|-----------------|
|        |              '' |

It will be observed that the petition refers to the act as act No. 80, and as having been approved on the second day of March, 1931, whereas, act No. 80, approved March 2, 1931, was an act making appropriations for the agricultural college of the fourth district. Acts 1931, page 224.

Each petition was a single page, and on the reverse side of each petition there was prepared an affidavit to be made by the circulator of the petition as to its genuineness, etc., with spaces in which to write the names of the signers appearing on the obverse side.

The petition containing the name of J. W. Westbrook, who appears here as the petitioner for the writ of mandamus, was filled out by copying the names of the petitioners and was signed by the circulator, but there was no jurat thereto as required by law. Immediately below the jurat there appears: "Copy of Act, Act No. 80," following which an exact copy of act 71 is set out. There then appears the following certificate of the Secretary of State:

"Certificate

"State Capitol,
"County of Pulaski, }ss.
"State of Arkansas. }.

"I, Ed F. McDonald, Secretary of State of the State of Arkansas, do hereby certify that the foregoing and hereto attached instrument of writing is a true and perfect copy of act No. 80 of the General Assembly of the State of Arkansas, and entitled, 'An act to amend section 3505 of Crawford & Moses' Digest of the Statutes of Arkansas,' approved March 2, 1931, the original of which was filed in my office on the 2d day of March, 1931.

"In testimony whereof, I hereunto set my hand and affix my official seal. Done at my office at the city of Little Rock, Arkansas, this the 1st day of April, 1931.

"Ed F. McDonald, Secretary of State.

"(Seal)"

We digress to say that the error in the number and date of the act was, in fact, made by the petitioners, and

not by the Secretary of State. Of this fact there is no question.

It is not questioned that, *prima facie*, the petitions contained the requisite number of signers, but it is insisted that the petitions were insufficient for various reasons. The Secretary of State declined to indorse the petitions as having been filed in his office, hence this suit.

It may be first said that it was expressly held in the recent case of *Townsend* v. *McDonald, ante* p. 273, that act No. 2 of the extraordinary session of 1911, hereinbefore referred to, which was passed as an enabling act to the amendment voted on as amendment No. 10, was not repealed by the adoption of the I. and R. amendment adopted in 1920, except in so far as it was in conflict with the amendment, and the act will therefore be read in connection with the amendment of 1920, which superseded the previous I. and R. amendment to the Constitution. The I. and R. amendment of 1920 recites that it "shall be in substitution of the initiative and referendum amendment, approved February 19, 1909, as the same appears in the Acts of Arkansas for 1909."

It was also expressly decided in the Townsend case, *supra,* that, unless there has been a substantial compliance with the provisions of the act of 1911 in the matter of attaching to the petition seeking to invoke the referendum a full and correct copy of the measure sought to be referred, the Secretary of State is without power to act, and mandamus will not lie to compel him to file petitions failing to set out a full and correct copy of the measure sought to be referred.

The first question for decision is therefore whether the petitions here under review substantially complied, in the matter of form, with the I. and R. amendment of 1920.

The opinion in the Townsend case discussed the purpose of the requirement that a copy of the act to be referred appear on the petitions, and the reason why its mandatory provisions should be followed, the reason being that the petitioner might, if he wished, be informed as to the exact provisions of the act sought to be referred.

746

But it was also said: ''It is only necessary that a full and correct copy of the measure on which the referendum is asked be filed with the petition and attached thereto in order that the petitioners may have the opportunity to read it and inform themselves as to the act to be referred before signing the petition, if they wish to do so.''

The Townsend case held also that a substantial compliance with the enabling statute and the amendment was sufficient, and, we think, there has been a substantial compliance in this respect.

It has been mentioned that the respective petitions comprised a single sheet, and that, except as to the error in number of the act and the date of its approval, an exact copy of the act was printed on the reverse side of the petition, and was available for the inspection of any person whose signature was solicited to the petition upon its presentation. There appears to be no requirement in the statute, or in the amendment itself, that the act be set out at any particular or certain place on the petition.

It is true, as has been said, that the act was numbered 71, and not 80, and that it was approved on February 26, 1931, and not on March 2, 1931; but this was obviously a clerical misprision, an error which should not have occurred, but one not fatal to the validity of the petition. The purpose of stating the number of the act and the date of its approval was to aid in its identification, but these errors could not have been misleading when an exact copy of the act otherwise appeared on the petition. It is settled law that even the title of an act is not controlling in its construction, although it is considered in determining its meaning when such meaning is otherwise in doubt. *Conway* v. *Summers,* 176 Ark. 796, 4 S. W. (2d) 19.

Upon the proposition that the petitioners failed, at the time of filing the petitions, to submit a title to be used on the ballot, it may be said that the amendment does provide that ''At the time of filing petitions the exact title to be used on the ballot shall by the petitioners be submitted with the petition, and on State-wide meas-

ures, shall be submitted to the State Board of Election Commissioners, who shall certify such title to the Secretary of State to be placed upon the ballot.''

We think there was a substantial compliance with this provision. The following communication was addressed and delivered to the Secretary of State:

''Little Rock, Arkansas,
''June 9, 1931

''Hon. Ed F. McDonald,
''Secretary of State and Ex-Officio Secretary
of the State Board of Election Commission.
''Dear Sir:

''In your official capacity, you will hereby take notice:

''That on behalf of the petitioners for reference to the electorate of the State, that certain act of the Legislature, approved March 2, 1931, known as the three months' divorce law, and being an act to amend § 3505 of Crawford and Moses' Digest of the statutes of the State of Arkansas, so as to permit the granting of decrees of divorce to applicants who have resided in the State for a period of only three months, is hereby submitted for placing upon the official ballot for the general election to be held Tuesday, the eighth day of November, 1932, the following title:

''Referendum of the act of the Legislature of 1931, amending § 3505 of Crawford and Moses' Digest of the laws of the State of Arkansas so as to permit the granting of decrees of divorce to applicants who have resided in the State for a period of only three months.

''For act, known as the Three Months' Divorce Law amending § 3505 of Crawford and Moses' Digest.

''Against act, known as the Three Months' Divorce Law, amending § 3505 of Crawford and Moses' Digest.

''Most respectfully submitted,
[Signed] ''J. W. Westbrook,
''For himself and all other petitioners.''

The Constitution does not require that the ballot title be furnished to each member of the State Board of Election Commissioners. The requirement is that it be

submitted to the board, and the communication set out above was addressed to the Secretary of State as ex-officio secretary of the State Board of Election Commissioners, and we know, as a matter of law, that the Secretary of State is a member of the State Board of Election Commissioners, and is the custodian of the records of the board, and the communication recited that it was addressed to the Secretary of State in his official capacity, and we therefore conclude that the ballot title was submitted to the State Board.

It is insisted, however, that the ballot title as furnished was insufficient and misleading in that it appears to describe the act as one permitting the granting of decrees of divorce to applicants who have resided in the State for ninety days only, whereas the true purpose of the act is to amend § 3505, Crawford & Moses' Digest of the laws of the State of Arkansas, so as to permit suits for divorce to be instituted by persons who have only resided in the State for a period of ninety days.

It is true that, if one were to read the act itself, even casually, he would know that it had not been enacted that one might obtain a divorce in this State by proving a residence therein for ninety days only; but it is equally true that the great body of the electors, when called upon to vote for or against an act at the general election, will derive their information about it from the ballot title. This is the purpose of the title.

It was said by the Supreme Court of California in the case of *Wallace* v. *Zinman,* 200 Cal. 585, 254 Pac. 946, 62 A. L. R. 1341:

"Every reason going to protect the public from imposition by undesignated matter in the title of an act of the Legislature obtains with like, if not greater, force to a measure that is to be voted upon by the people. It is common knowledge that an initiative measure is originated by some organization or a small group of people, and they circulate a petition requiring the signatures of only 8 per cent. of the voters; that the measure is then placed upon the ballot and a large number of the population, not knowing what the context of the act is, rely

solely upon its title as a guide to intelligent voting thereon. Speaking of the identical question before us, the Supreme Court of Oregon, in *State ex rel. Gibson* v. *Richardson,* 48 Ore. 309-319, 8 L. R. A. (N. S.) 362, 85 Pac. 229, said: 'The validity of laws adopted at the polls must be determined, like enactments by the legislative assembly, by the test of the Constitution as modified by the amendment thereto. Though the argument that a proposed measure must depend upon its own merits may not apply to acts initiated by petitions, a valid reason for requiring that the subject-matter of laws to be adopted or rejected at the polls should be stated in the title nevertheless exists. The majority of qualified electors are so much interested in managing their own affairs that they have no time carefully to consider measures affecting the general public. A great number of voters undoubtedly have a superficial knowledge of proposed laws to be voted upon, which is derived from newspaper comments or from conversation with their associates. We think the assertion may safely be ventured that it is only the few persons who earnestly favor or zealously oppose the passage of a proposed law, initiated by petition, who have attentively studied its contents and know how it will probably affect their private interests. The greater number of voters do not possess this information and usually derive their knowledge of the contents of a proposed law from an inspection of the title thereof, which is sometimes secured only from the very meager details afforded by a ballot which is examined in an election booth preparatory to exercising the right of suffrage.''

Upon the same subject, it was said by the Supreme Judicial Court of Massachusetts in *Re Opinion of Justices,* 171 N. E. 294, 69 A. L. R. 388, that the ballot title should be complete enough to convey an intelligible idea, and scope and import, of the proposed law, and that it ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and that it must contain no partisan coloring.

As the ballot title here submitted might mislead, we have concluded that it was defective and insufficient, and

that the amendment was not sufficiently complied with in this respect.

Having reached the conclusion that this mandatory provision of the amendment has not been complied with, we might rest this opinion upon that holding, and refuse to order the writ of mandamus for that reason. But, in view of the public interest involved as to the procedure under the amendment and the enabling act, we proceed to pass upon certain other questions raised in the case which would themselves be conclusive of the plaintiff's right to have a writ of mandamus issued.

It is insisted that plaintiff Westbrook is not a petitioner, and that he therefore had no authority to supply the ballot title, and that, not being a petitioner, he has no right to maintain this suit for mandamus.

We have said that the petition containing the name of Westbrook did not have the jurat which the amendment requires. The amendment provides: "Only legal votes shall be counted upon petitions. Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto the affidavit of the person circulating the same that all signatures thereon were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine, and that the person signing is a legal voter and no other affidavit or verification shall be required to establish the genuineness of such signatures."

This language is too plain to leave any doubt as to its meaning. The petition is not complete and is not entitled to be filed until the jurat above set out has been attached thereto, and as the petition upon which the name of Westbrook appears did not contain this jurat, it follows that he is not to be counted or considered as a petitioner.

The complaint or the petition for a review of the ruling of the Secretary of State in which the mandamus is prayed does allege, however, that Westbrook is a resident, citizen and qualified elector of the State, and that he is proceeding for himself and on behalf of all other petitioners for the referendum. In other words, he is act-

ing for and on behalf of persons who are petitioners, and his attitude is that of a citizen who is proceeding as such on behalf of himself and of all others who are petitioners. It is alleged that there are over twelve thousand petitioners, and the amendment certainly does not contemplate that each and all of them shall submit the ballot title, nor is it required that each and all of them shall be made parties to the petition to review the action of the Secretary of State which the amendment expressly authorizes. It is insisted that § 9 of the enabling act of 1911 confers authority upon Westbrook thus to act.

Now the paragraph of the amendment entitled "Title" requires that at the time of filing the petitions the exact title to be used on the ballot shall by the petitioners be submitted with the petition. We think this is a matter in which one or more petitioners might act for themselves and for all other petitioners, but Westbrook, in his communication to the Secretary of State, named no person for whom he was authorized to act except himself, and he was not a petitioner. He did state that he was acting for himself and all other petitioners, but he named no one except himself. Proceedings of this kind should be had in the name of some one or more of the petitioners, so that it might be made to appear to the Secretary of State, *prima facie* at least, that the persons attempting to act were authorized to do so by the persons named as petitioners.

We have a statute which provides: "Where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all." Section 1098, Crawford & Moses' Digest. But the person who so acts for a class must be a member of the class for whom he acts. *District No. 21, United Mine Workers of America* v. *Bourland,* 169 Ark. 796, 277 S. W. 546; *Howard-Sevier Road Imp. Dist. No. 1* v. *Hunt,* 166 Ark. 62, 262 S. W. 517.

It is insisted that, although Westbrook is not a petitioner, he has authority to maintain this suit as a citizen

under § 9 of the enabling act of 1911. This section provides that, if the Secretary of State shall refuse to accept and file any petition for the initiative or for the referendum, any citizen may apply within ten days after such refusal to the circuit court, or to the judge thereof in vacation, for a writ of mandamus to compel him to do so.

This section appears to have been repealed by the paragraph of the amendment entitled "Sufficiency of Petition." In this paragraph of the amendment it is provided that: "The sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." This conflict between the act and the amendment is such that the repeal of this section of the act would appear to result by implication. But, if this be not true, the act conferring the right upon a citizen who might not be a petitioner limits the right of such citizen who is applying for such writ of mandamus to a period of ten days after the refusal of the Secretary of State to accept and file the petition. This suit, brought by Westbrook, was not filed until the eleventh day after the Secretary of State had refused to accept and file the petitions in a written statement addressed to Westbrook and had announced his refusal to accept and file the petitions on the ground of their insufficiency. Therefore, if § 9 be not repealed, it granted Westbrook, as a citizen, no right to institute this suit, because he did not institute it within the time limited by that section.

It is suggested in a brief by *amicus curiae* that the petitions had not been filed at all, inasmuch as the Secretary of State had refused to mark them as filed. We do not concur in this view. It is settled law that, while it is proper for an officer whose duty it is to receive and file an instrument in writing to indorse thereon the date of filing when he receives the instrument, such indorsement is not the filing, but is merely an evidence of filing, and that the instrument is filed when it is delivered to the

officer at his office to be received by him and kept on file. *C. A. Blanton Co.* v. *First National Bank of Marked Tree,* 175 Ark. 1107, 1 S. W. (2d) 558; *Hogue* v. *Hogue,* 137 Ark. 485, 208 S. W. 579; *Forehand* v. *Higbee,* 133 Ark. 191, 202 S. W. 29; *Montague* v. *Craddock,* 128 Ark. 59, 193 S. W. 268; *Neas* v. *Whitener-London Realty Co.,* 119 Ark. 301, 178 S. W. 390, L. R. A. 1916A, 525; *Case & Co.* v. *Hargadine,* 43 Ark. 144.

Therefore, we hold that the petitions were, in fact, filed with the Secretary of State when they were delivered to that officer at his office for the purpose of being filed, although he refused to indorse thereon the fact that they had been so received and filed.

We conclude, for the reasons stated, that the writ of mandamus should not be granted, and it is so ordered.

HUMPHREYS and MEHAFFY, JJ., dissent.

MEHAFFY, J., (dissenting). I do not agree with the majority in holding that the ballot title submitted might mislead, and that it was therefore defective and insufficient, and that the constitutional amendment was not sufficiently complied with in this respect.

The ballot title submitted is as follows, ''Referendum of the act of the Legislature of 1931, amending § 3505 of Crawford & Moses' Digest of the laws of the State of Arkansas so as to permit the granting of decrees of divorce to applicants who have resided in the State for a period of only three months.

''For act, known as the Three Months' Divorce Law, amending § 3505 of Crawford & Moses' Digest.''

''Against act, known as the Three Months' Divorce Law, amending § 3505 of Crawford & Moses' Digest.''

It will be observed that the title submitted does not undertake to state on what grounds or for what causes divorces may be granted, but it plainly shows that it is an amendment to § 3505 of Crawford & Moses' Digest, ''so as to permit the granting of decrees of divorce to applicants who have resided in the State of Arkansas for a period of only three months.''

I think anybody would understand from the title submitted that nothing had been changed in the divorce laws except the time applicants had to live in the State of Arkansas before a divorce could be granted.

There are numerous causes of divorce and the section of the statute amended provides: "The plaintiff, to obtain a divorce, must allege and prove in addition to a legal cause of divorce, a residence in the State for one year next before the commencement of the action."

The act of 1931 amended that section of the Digest so as to permit applicants who have resided in the State for three months instead of one year to obtain a divorce.

The act only requires a residence in the State of two months before suit is brought, and three months before the final judgment granting the divorce.

I do not see how any one old enough and qualified to vote could be misled by the title suggested by the ballot. The majority say that if one were to read the act itself, even casually, he would know that it had not been enacted that one might obtain divorce by proving a residence in the State for ninety days only, but they say the great body of the electorate, when called upon to vote for or against an act at the general election, will derive their information about it from the ballot title. If they do, they will know that the act provides that one need live in the State only ninety days in order to procure a divorce; they will know that it is an amendment to § 3505, of Crawford & Moses' Digest.

The majority calls attention to the case of *Wallace* v. *Zinman*, 200 Cal. 585, 254 S. W. 946, 62 A. L. R. 1341, as sustaining its holding that the ballot title is insufficient. The court in that case held that the act involved was violative of a section of the Constitution of California which provides: "Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title."

The court also held that it violated another section of the Constitution which reads as follows: "All laws of a general nature shall have a uniform operation."

It then held that the act was invalid for some other reasons. The title of the act passed on by the California court was as follows:

"An act to be known as the Usury Law relating to the Rate of Interest which may be charged for the loan or forbearance of Money, Goods, or things in action, or on acts after demand, or on judgments, providing penalties for the violation of the provisions hereof and repealing §§ 1917, 1918, 1919, and 1920 of the Civil Code and all acts and parts of acts in conflict with this Act."

The court then called attention to the provisions of the act and held that the subject-matter of the act was not referred to directly or indirectly in the title to said statute. If the decision in this California case has any application at all to the instant case, I am unable to see it.

Another case referred to by the majority is *In Re* Opinion of the Justices, 171 N. E. 294, 69 A. L. R. 388. That was a case where 13 questions were submitted to the Justices by the Senate, and the only question answered by the Justices that has any bearing on the present case was the first question, and it is as follows: "Does the 'description of the proposed law' (as it appears on the petition blanks, copy of which is submitted herewith and as reprinted on pages 130 and 131 of said Senate, No. 280) required by said article forty-eight to be printed at the top of each signature blank and also upon the ballot, meet the requirements of said article forty-eight and adequately inform the voters as to the provisions of said proposed law, especially as to the differences between said provisions and the present system of compulsory motor vehicle liability insurance?"

The court, among other things, said: "The description is inaccurate in that it includes these statutes as among those repealed. The description is insufficient in that by section 1 of the proposed law the limitation of one year after the rendition of the judgment for bring-

ing suit in equity to enforce against an insurer payment of a judgment for personal injuries or death caused by the insured is repealed. That repeal is not required because inconsistent with the proposed law. It relates to an independent and important matter to which no reference is made in the description."

There are a number of other things pointed out by the Justices that make the description insufficient. No such differences can be found in the ballot title in the instant case. Certainly it can not be supposed that any voter would think that the law intended that any person could obtain a divorce simply by living in Arkansas 90 days without showing some cause of divorce, and I think they could not have been misled by this ballot title.

The majority referred to one other opinion of the Oregon court, *State ex rel. Gibson* v. *Richardson,* 48 Ore. 309, 8 L. R. A. (N. S.) 362, 85 Pac. 229. In that case however, the court held that the title was sufficient, and in my judgment there is nothing in that opinion that supports the opinion of the majority in this case. The Oregon court was considering the title of the act and not the ballot title.

Neither of the cases cited by the majority support its decision for two reasons: first, the cases cited as authority by the majority were decisions on the sufficiency of the title of a bill or act and not the ballot title; second, the court held in each of the cases that the title violated a provision of the Constitution which designated things necessary to be stated in the title.

We have no provision either in the Constitution or the laws of Arkansas prescribing what the ballot title shall contain. The constitutional amendment simply provides that the exact title to be used on the ballot shall be by the petitioners submitted with the petition. There is no intimation in the Constitution or the law as to what the title shall contain.

After the adoption of the first initiative and referendum amendment, the Legislature passed an act to the effect that the Secretary of State should cause the ballot

title to be printed, and that the ballot title should be the legislative title of the measure.

Evidently the people, in adopting the present amendment to the Constitution, intended that the petitioners should submit the title, and did not intend that it should be the legislative title.

The constitutional provision also requires that the State Board of Election Commissioners shall certify such title, that is, the title submitted by the petitioners to the Secretary of State to be placed upon the ballot. The people could have adopted an amendment requiring the court or some other officer or officers to prepare the ballot title, but they did not see fit to do so.

The Oregon case cited to support the majority opinion, as we have already said, was considering the title of an act, and not a ballot title. The Constitution of that State provides: ''Every act shall embrace but one subject and matters connected therewith, which subject shall be expressed in the title.''

We have no such provision in our Constitution, and the Oregon case is therefore not authority for the opinion of the majority.

The majority might have cited an Oregon case discussing the identical question that we have here, that is, the ballot title. In a case decided by the Oregon Supreme Court more than three years after the opinion referred to by the majority, that court passed upon the sufficiency of a ballot title. In Oregon at that time, the law required the printing of the act in pamphlets. Our law requires the publication in newspapers in each county.

The Oregon court said, in holding that the ballot title was sufficient: ''There is nothing in the Constitution as amended, implying that the full title, as appears in the proposed measure, shall appear upon the ballot; nor does the act under consideration so require. The method provided is adequate to identify the bill as indicated on the ballot with the proposed measure on file in the office of the Secretary of State, the full title and text of which appears in pamphlets, a copy of which

under the law in force, at the time the local option law was voted on, was presumably in the hands of each voter. The method then in use, and since improved upon, was and is analogous to the proceeding before the Legislative Assembly. * * * The only question then to determine is, does the title as designated and used on the ballot come within the purview of the Constitution as amended and supplemented by the act of 1903? We think it does. * * * As above stated, the title of a bill before the Legislative Assembly is required to be voted upon, and the full title is presumed to appear thereon. This method, under the Initiative, would be impracticable; for as manifest from the length of the title of the act under consideration, if any measures should be submitted to the voters at one time to print upon the ballot a full title to each would require the ballot to contain many pages of printed matter, which cumbersome method was plainly intended to be avoided. To recognize the rule invoked by appellant would defeat the very purpose contemplated by the adoption in our fundamental laws of our direct and additional system of law-making. The system provided as above considered was obviously designated to take the place of that employed by the Legislature and accomplishes the same purpose." *State* v. *Longworthy*, 104 Pac. Rep. 424.

To hold that the ballot title submitted by the petitioners in this case is insufficient would defeat the very purpose of the Initiative and Referendum Amendment.

The law requires that to every petition for the referendum shall be attached a full and correct copy of the measure on which the referendum is ordered, and the law also provides that, not later than the first Monday of the third month before any regular general election at which any proposed law referred is to be submitted to the people, the Secretary of State shall cause to be published in one newspaper in each county for thirty days a true copy of the title and text, and all that is required of the petitioners is to submit a ballot title which may

be compared with the act on file with the Secretary of State or the act as published in the county papers.

The purpose of the amendment is to permit the people to refer laws to themselves and to permit them to vote on these laws, and there is no provision anywhere in our Constitution or laws that the ballot title shall be such a full title as contended for in this case. It would be impracticable and probably no two persons would prepare the same ballot title for any measure. The only thing necessary is, as said by the Oregon court, that the ballot title be such that the voter can identify it as being the act on file with the Secretary of State. To hold otherwise would defeat the very purpose of the amendment.

With due respect to my associates, I think they have put form above substance and have underestimated the intelligence of the voters of Arkansas.

They quote some argument from the California and Massachusetts courts about protecting the people. The argument is plausible, but I do not think it is true. I think the people generally devote as much time to a discussion of measures of this sort as we do, and that they can vote on it just as intelligently. Not only people differ about what a ballot title should be, but courts differ about the construction of the Constitution and the laws.

An illustration of this may be found in the decisions of the Arkansas and Colorado courts on the question of the number of amendments that could be submitted at one time after the adoption of the Initiative and Referendum Amendment. This court held that only three amendments could be submitted at one election notwithstanding the adoption of the amendment which did not limit the number. *State ex rel.* v. *Donaghey,* 106 Ark. 56, 152 S. W. 746.

The Colorado court held exactly the reverse, and in so holding said: ''We have no right to assume such a result, for such argument, if heeded, would sweep away our present form of government. * * * We cannot be unmindful that this court must not usurp power or abuse its right of construction or lose sight of the dangers

which might arise, not only to the State, but to the court itself, from such usurpation and abuse. It is just as important for the preservation and just administration of government of this State that the power of courts should be exerted only within the limits of the Constitution and be not abused as it is that the power of the people, the General Assembly or Executive Department, should be so exerted and not abused." *State ex rel. Tate* v. *Prevost,* 134 Pac. 129.

I think the words of the Colorado court above quoted are applicable here. Of course there may be a few voters who would not understand from the ballot title what act they were voting for or against, but that may be said with reference to any measure submitted to the people.

I think to hold, as the majority has, that this ballot title is insufficient destroys the constitutional amendment permitting the people to have measures referred to them. There must, of course, be a compliance with the provisions of the Constitution and the laws in order to permit the people to vote on any measure, but we have recently held that a substantial compliance is sufficient.

It is next held by the majority that Westbrook was not a petitioner, and that he therefore had no right to submit a ballot title or to bring suit. The opinion of the majority, to the effect that Westbrook was not a petitioner is based on a provision of the amendment to the Constitution. The first sentence of the paragraph on which the majority opinion is based, reads as follows: "Only legal votes shall be counted upon petitions."

It is true that this paragraph requires an affidavit, but the purpose of the affidavit is to show that the signer of the petition is a legal voter, and that his signature is genuine, and the Constitution provides that, if this affidavit is made, no other affidavit or verification shall be required to establish the genuineness of such signature. When this entire paragraph is considered, it clearly appears that any legal voter may sign the petition, and the only requirement is that the signer be a legal voter, otherwise his vote will not be counted.

The Constitution requires, in order to refer a measure, a certain per cent. of the voters of the State to sign the petition. That, of course, means legal voters, and it was the intention of this provision of the Constitution that the proper number of legal voters should sign the petition.

Westbrook was unquestionably, in my judgment, a petitioner, and it is not disputed that he was a legal voter, and to say that he is not a petitioner because the person who circulated the petition neglected to attach the jurat, is in my judgment a narrow technical construction of the Constitution.

The Constitution does not provide that proof that a petitioner is a legal voter may not be made in other ways besides the affidavit referred to, but, if it did, if Westbrook was a legal voter he was a petitioner, and, even though his vote could not be counted in determining whether a sufficient number had signed the petition, he would still have the right to submit the ballot title.

But, if he were not a petitioner, he would have the right as a lawyer, not only to file the petition with the Secretary of State, but to submit the ballot title for the petitioners. This court knows that Westbrook has been practicing law in this State for more than thirty years, and the other attorney with him in bringing the suit to review the action of the Secretary of State, is a former Attorney General of the State of Arkansas, and these lawyers had the right to bring the suit for the petitioners, even if it be conceded that Westbrook was not a petitioner.

It was publicly published and generally known that Westbrook was representing the petitioners, and the majority in its opinion holds that the petitions were properly filed, and I think this is correct. They were filed, however, by Westbrook, representing the petitioners. The fact that Westbrook represented the petitioners was not only published all over Arkansas, but the petitioners themselves referred to him as their representative publicly, and none of them ever questioned his authority to submit for them the ballot title or to bring this suit.

The majority state, however, that whoever acts for a class must be a member of that class, and cite several authorities and quote § 1098 of Crawford & Moses' Digest. I do not think that this section has any application here for several reasons. This is not the kind of action mentioned in said section; is not a civil action, but is in the nature of special proceedings. ''A civil action is an ordinary proceeding in a court of justice by one party against another for the enforcement of a private right, or the redress or prevention of a private wrong. It may also be brought for the recovery of a penalty or forfeiture.'' Section 1028, Crawford & Moses' Digest.

The statute also provides that every other remedy in a civil case is a special proceeding. Section 1029, Crawford & Moses' Digest.

It clearly appears that this proceeding is not for the enforcement of a private wrong. It is therefore a special proceeding, and the section with reference to many persons interested in a thing of common or general interest has no application.

The provisions of the Constitution permitting people to refer measures to themselves should be liberally construed, so as to effect the purpose for which they were adopted. If narrow technical construction is resorted to, it defeats the very purpose of the Constitution and deprives the people of the benefits conferred by the constitutional provision.

I think the objection to the ballot title and as to Westbrook not having authority to submit the title and bring the suit for the petitioners is purely technical and ought not, in my judgment, to be used to prevent the public from voting on this law. It is not a question of whether the law is wise or unwise, good or bad, but the question is, shall the people have a right to vote on it? I think they should.

Mr. Justice HUMPHREYS agrees with me in the views herein expressed. We think the writ prayed for should be granted.