E.E. CARTWRIGHT *v.* Howard CARNEY

84-316                                              690 S.W.2d 716

Supreme Court of Arkansas
Opinion delivered May 20, 1985

122

*Wood Law Firm*, for appellant.

*McDaniel, Gott & Wells, P.A.*, for appellee.

DAVID NEWBERN, Justice. E. E. Cartwright was the Democratic Party nominee for sheriff of Mississippi County in the 1984 general election. Howard Carney was a write-in·candidate. According to the original tally of votes, Carney was the winner. Cartwright sought and was granted a recount, and the county election commission certified Cartwright as the winner after discarding a number of votes it had previously counted as having been cast for Carney. Carney then filed an election contest complaint with the circuit court.

The complaint alleged that the recount should not have been conducted by the commission because Cartwright's letter requesting it did not meet the requirement of Ark. Stat. Ann. § 3-508 (Repl. 1976) that a request for a recount state ". . . reasonable grounds for believing that the return, as made by the judges of the election, does not give a correct statement of the vote as actually cast. . . ." The complaint also asked that, in the event the recount was found to have been warranted, the court conduct an election contest and name the winner.

The court found the recount request was insufficient to warrant the recount but, anticipating appeal and possible reversal of that decision, proceeded with the election contest and ultimately declared Carney to be the winner after finding the election commission improperly discarded some of the write-in votes which were originally, and properly, counted as being for Carney. The appellant, Cartwright, has raised six points of appeal. We have combined some of them for purposes of our discussion.

## 1. Sufficiency of the complaint

Cartwright contends Carney's complaint was insufficient because it did not meet the standards set in a line of cases typified by *Files* v. *Hill*, 268 Ark. 106, 594 S.W.2d 836 (1980), and *Jones* v. *Etheridge*, 242 Ark. 907, 416 S.W.2d 306 (1967). Those two named cases dealt, respectively, with allegations of failure to let prospective write-in voters vote for the write-in candidate and allegations of illegal votes having been cast. The theme of those cases is that an election contest complaint is insufficient unless it names the particular disenfranchised or illegal voters, individually, and alleges the manner in which the election result would be changed if the allegations were proven.

The allegations here are quite different. The complaint alleges improper actions on the part of the election commission in allowing a recount of legally cast ballots and, alternatively, in the manner of recounting them. The complaint clearly sets forth the allegations of illegality, and it shows and says the obvious difference in the result if the allegations are proven. We hold that in these circumstances there was no need to go behind the ballots or otherwise to name disenfranchised or illegal voters, thus the cited cases do not apply.

## 2. Due process

Cartwright contends it was error for the court to conduct the contest with such alacrity as to deny requests and time for discovery. He contends that despite Ark. Stat. Ann. § 3-1002 (Repl. 1976), which requires that election contests be given precedence on the court's docket and speedily determined, the court denied him substantial rights by not permitting continuances and discovery.

Cartwright wanted to have the court consider all 17,087 ballots cast in the election rather than just the 1,735 write-in ballots which the commission discarded. The court limited its consideration to the latter. Cartwright alleged in an "affirmative defense" that some of the write-in ballots were not in the handwriting of the voters by whom they were cast and thus they were not in compliance with Ark. Stat. Ann. § 3-717(b) (Repl. 1976). Unlike the complaint, this portion of the answer implicates *Files* v. *Hill* because it brings up a question of the legality of votes

cast. The court dismissed this "affirmative defense" because it did not name the voters casting those ballots or show the result of the election would be changed if the allegation were proven.

It might be asked how Cartwright is supposed to be able to demonstrate the accuracy of his suspicions about the handwriting of the voters absent discovery. That is a good question, but the law in this state does not permit "notice pleading" with its concomitant heavy emphasis on discovery. One must demonstrate more than a suspicion before getting to the discovery phase of litigation. *Harvey* v. *Eastman Kodak Co.*, 271 Ark. 783, 610 S.W.2d 582 (1981). That is particularly true in election contests where we have the legislative, and obviously appropriate, mandate for speedy determination and this court's condemnation of "fishing expeditions" in this context. *Jones* v. *Etheridge, supra.*

The court permitted both parties access to the ballots upon which the contest was focused, i.e., the write-in ballots which were attempted but were thrown out by the commission.

It was proper for the court to restrict the issues in the contest to the ones raised by Carney. In *McClain* v. *Fish*, 159 Ark. 199, 251 S.W.2d 686 (1923), this court held that the defendant in an election contest could raise questions about the legality of votes cast for his opponent without meeting statutory requirements that they be raised within a certain time after the election. The logic of that case is compelling, as the defendant, who has just won an election, is in no position to contest it. However, the plaintiff, having initiated the contest, should not be allowed to preclude the defendant from questioning the legality of votes cast for the plaintiff because the defendant (winner) did not contest the election in time. That case, however, has nothing to do with the sufficiency of the defendant's allegations, as opposed to their timeliness.

The court was correct in dismissing Cartwright's allegations, and with that dismissal went whatever need there may have been for discovery outside of looking at the ballots being contested.

### 3. The recount request

Cartwright's recount request consisted of a letter to the chairman of the election commission. The letter stated it had

come to Cartwright's attention that there were "numerous irregularities" in the election. No particular irregularities were stated to have occurred. The letter concluded, however, as follows:

> Furthermore, it is requested that the Mississippi County Election Commission make decisions on the following questions prior to this recount:
>
> (1) How does the write-in candidate's name have to be written on the ballot?
>
> > (a) Is just the last name sufficient?
> >
> > (b) Does the name have to be spelled correctly?
> >
> > (c) Can the name be written backward? Example: Carney Howard.
>
> (2) Will other names written on the ballot be counted for the write-in candidate? Examples: Conley, Corney, or Collins.
>
> (3) Will names that are illegible be counted for the write-in candidate?
>
> (4) Does the block for the write-in candidate have to be marked?
>
> (5) Will the vote be counted for E. E. "Hoss" Cartwright if the write-in candidate's line is blank and both blocks are marked?

Ark. Stat. Ann. § 3-508 (Repl. 1976) says, in part:

> . . . [A]ny candidate voted for who may be dissatisfied with the returns from any precinct may have a recount of the votes cast therein by presenting to the County Election Commissioners a petition showing reasonable grounds for believing that the return, as made by the judges of election, does not give a correct statement of the vote as actually cast, as the same is shown by the ballot returned with the certificate of the judges. . . .

The letter stated no grounds, although from the questions asked, some grounds might have been surmised. We agree with the trial court that the letter was not sufficient to comply with the statute,

and we could have held that, as the recount was not properly initiated, the case should, without further discussion, be affirmed. However, we hope our discussion of all of the appellant's points will be useful in future cases.

In recounting the votes, the election commission used its answers to the questions posed in the letter as bases to evaluate the write-in ballots. The answers appear parenthetically with the questions repeated below:

(1) How does the write-in candidate's name have to be written on the ballot?

(a) Is just the last name sufficient? (No)
(b) Does the name have to be spelled correctly? (Yes)
(c) Can the name be written backward? Example: Carney Howard. (No)

(2) Will other names written on the ballot be counted for the write-in candidate? Examples: Conley, Corney, or Collins. (No)

(3) Will names that are illegible be counted for the write-in candidate? (No)

(4) Does the block for the write-in candidate have to be marked? (No)

(5) Will the vote be counted for E. E. "Hoss" Cartwright if the write-in candidate's line is blank and both blocks are marked? (No)

These answers made it appear as if the commission were applying the language of Ark. Stat. Ann. § 3-717(b) (Repl. 1976) which, in addition to requiring a write-in vote to be in the handwriting of the voters, says the following:

In addition, no write-in vote shall be counted unless the name written on the ballot shall be the full name of the person for whom the vote is cast, as the same appears on the Voter Registration Affidavit of the person for whom the vote is cast.

In his evaluation of the ballots, the court refused to follow that language. In an order advising the parties of the standard to be applied, the court stated:

The court finds that that portion of the . . . statute . . . is unconstitutional on its face as an unreasonable and unjustified burden on the exercise of the franchise by anyone wishing to vote for a write-in candidate. The court further finds that any ballot which adequately indicates the voter's intent to cast his ballot for a write-in candidate shall, if otherwise valid, be counted. The court finds that a write-in vote shall be counted for the write-in candidate if the intention of the voter can be clearly ascertained, regardless of any misspelling, irregularities, reverse listing of the name, (e.g. Carney, Howard), or other such irregularity in the writing of the name of the write-in candidate.

The appellant, Cartwright, does not contend the statute is constitutional. Rather, he argues that, assuming the court was correct in striking it down, the court should not have substituted his own standards, that is, the court should not have "legislated" to fill the void left by the declaration of the statute's unconstitutionality.

We quite agree that court should not "legislate" in the usual sense of that term. However, when the General Assembly sets in motion governmental machinery which will go awry absent a part which has been declared unconstitutional, the duty of the court is to keep it running if possible. The result reached here is surely the same as would have been reached had there been no statutory statement whatever on the manner of casting a write-in ballot. The court did not legislate a replacement statute. Rather, it simply and appropriately ignored the statute as being unconstitutional.

The emptiness of the appellant's argument on this point is demonstrated by his insistence that the trial court should have taken testimony to determine the "clear" intent of the voters rather than just apply that standard to examination of the ballots.

### 4. Ouster

Cartwright contends it was improper for the court to "oust" him from office and name his successor, citing Ark. Stat. Ann. § 3-1007 (Repl. 1976) and *Robinson* v. *Knowlton*, 183 Ark. 1127, 40 S.W.2d 450 (1931).

In response to this argument it is enough to say that

Cartwright had not taken office as sheriff. The final order of the court was filed on December 28, 1984, before the term of office beginning in 1985. The statute and the case are thus inapplicable.

Affirmed.