Arnell WILLIS, *et al. v.* Barbara KING, *et al.*

02-988 98 S.W.3d 427

Supreme Court of Arkansas
Opinion delivered February 20, 2003

*John W. Walker, P.A.*, by: *John W. Walker*; and *Terrence Cain*, for appellants.

*Rieves, Rubens & Mayton*, by: *Kent J. Rubens*; and *Roscopf & Roscopf, P.A.*, by: *Charles B. Roscopf*, for appellee Barbara King.

*Mark Pryor*, Att'y Gen., by: *Jeff R. Priebe*, Ass't Att'y Gen., for appellee Arkansas State Board of Election Commissioners: Earnest Brown, Robert Louis Carruthers, Ernest E. Edwards, Toni Phillips, and Sharon Priest.

*L. Ashley Higgins, P.A.*, by: *L. Ashley Higgins*, for appellee Phillips County Election Commissioners Joann Smith, Maxine Miller, and Joe White, and Phillips County Clerk Linda White.

R OBERT L. BROWN, Justice. Appellant Arnell Willis opposed Appellee Barbara King in the race for District 13 Representative to the Arkansas House of Representatives. The Phillips County Election Commissioners certified that Ms. King won the Democratic Preferential Primary for that position by a vote of 2,667 to 2,576. According to a complaint filed by Mr. Willis contesting the election, Ms. King's margin of victory was secured by serious violations of the Election Code, including persons voting more than once, forged ballots, and manipulation of absentee ballots in Ms. King's favor. Mr. Willis filed his complaint in timely fashion, but he failed to attach a verification of the facts contained in the complaint within the statutory time limit.

The relevant dates are these: On May 31, 2002, the Phillips County Election Commissioners certified the election returns in the preferential primary, including the results of the King/Willis race. Twenty days later, on June 20, 2002, Mr. Willis filed his complaint contesting the election. Four days after that, on June 24, 2002, Mr. Willis filed an affidavit, verifying the truth of the allegations made in his complaint.

The defendants, now appellees, in the case — Ms. King, the Phillips County Election Commissioners, the Phillips County Circuit Clerk, and the Arkansas State Election Commissioners — uniformly moved to dismiss Mr. Willis's complaint for lack of subject-matter jurisdiction.[1] They asserted that the Election Code required an affidavit verifying the allegations of the complaint be filed within twenty days of the election's certification and that Mr. Willis was four days late with his verification. The circuit court agreed and dismissed the complaint for lack of subject-matter jurisdiction.

In his appeal from the circuit court's dismissal order, Mr. Willis contends that he substantially complied with the statutory mandate and that this should suffice. We disagree. Because it

---

[1] Mr. Willis also sued the Phillips County Circuit Clerk, the Phillips County Election Commissioners, and the members of the Arkansas State Board of Election Commissioners individually by name, but he voluntarily dismissed those claims. The State in its brief correctly points out that the name of the state board is "Arkansas State Board of Election Commissioners."

lies within the province of this court to interpret a statute, we review a circuit court's construction of the law *de novo. E.g., Hodges v. Huckabee,* 338 Ark. 454, 995 S.W.2d 341 (1999). A circuit court's interpretation of the law will be accepted on appeal, however, unless it is demonstrated to be erroneous. *Id.*

■ ■ This case involves statutory construction of Ark. Code Ann. § 7-5-801 (Repl. 2000), the relevant subsections of which read as follows:

> (a) A right of action is conferred on any candidate to contest the certification of nomination or the certificate of vote as made by the appropriate officials in any election.
>
> . . . .
>
> (d) The complaint shall be verified by the affidavit of the contestant to the effect that he believes the statements to be true and shall be filed within twenty (20) days of the certification complained of.

The cardinal rule of statutory construction is to give effect to the legislative will. *E.g., Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n,* 342 Ark. 591, 29 S.W.3d 730 (2000). When a statute is unambiguous on its face, the court will look to the plain and ordinary meaning of the text, and in such cases, there is no need to resort to the canons of statutory construction. *E.g., R.N. v. J.M.,* 347 Ark. 203, 61 S.W.3d 149 (2001).

■ A losing candidate in an election has no common-law right or constitutional right to contest the outcome of an election, since the right is purely statutory. *See e.g., Brewer v. Fergus* 348 Ark. 577, 79 S.W.3d 831 (2002). The deadlines set out in § 7-5-801 quoted above have long been held to be both mandatory and jurisdictional. *See, e.g., McCastlain v. Elmore,* 340 Ark. 365, 10 S.W.3d 835 (2000) (citing *Jenkins v. Bogard,* 335 Ark. 334, 980 S.W.2d 270 (1998); *Gay v. Brooks,* 251 Ark. 565, 473 S.W.2d 441 (1971); *Moore v. Childers,* 186 Ark. 563, 54 S.W.2d 409 (1932); *Gower v. Johnson,* 173 Ark. 120, 292 S.W. 382) (1927)). This court strictly construes jurisdictional requirements in election contests. *McCastlain v. Elmore, supra.*

Mr. Willis urges this court to hold that a candidate substantially complies with § 7-5-801, when the affidavit is filed within a

reasonable time after the twenty-day deadline and when no party is prejudiced by the tardy filing. Mr. Willis asserts in his brief that "[i]t is an open question what degree of compliance satisfies the affidavit requirement of Section 7-5-801(d)" and argues all cases of this court before 1969 (the effective date of the present § 7-5-801) are not apposite.

Next, Mr. Willis argues that the trial court in *McCastlain v. Elmore, supra,* upheld the sufficiency of the contestant's timely-filed *jurat,* which read "Subscribed and sworn to before me this 2nd day of December, 1998," and that this supports his contention that substantial compliance is the appropriate standard of review. He offers that this court, on appeal, upheld that *jurat sub silentio* and that, because the trial court "refused to exalt form over substance" in that case, we should do the same in the case before us. He further claims that the Election Code is designed to discourage frivolous filings, protect the continuity of the administration of government, and uphold the integrity of elected offices. As a final point, he contends that the purpose of the verification is to prevent frivolous contests, not to defeat meritorious contests on hypertechnical grounds.

We turn then to our analysis of § 7-5-801 and its legislative history. Section 7-5-801 is a codification of Act 465 of 1969, but the statutory mandate for timeliness has a significant history in Arkansas. The precursor to § 7-5-801 first took the form of an initiative act in 1917. *See* Initiative Act No. 1, 1917 Ark. Acts 2287. Initiative Act No. 1 was codified in the Crawford and Moses Digest and read in pertinent part as follows:

> A right of action is hereby conferred on any candidate to contest the certification of nomination or the certification of vote as made by the county central committee. The action shall be brought in civil court. . . . The complaint shall be supported by the affidavit of at least ten reputable citizens and shall be filed within ten days of the certification complained of, if the complaint is against the certification in one county, and within twenty days if against the certification in more than one county. The complaint shall be answered within ten days.

Crawford & Moses Digest § 3772 (1921). A statute containing the same language is reported in Pope's Digest of 1937 at § 4738.

That statute was amended by Act 386 of 1947. *See* Act 386, 1947 Ark. Acts 884 (codified at Ark. Stat. Ann. § 3-245 (1947)). The new act provided that an affidavit of the contestant in lieu of ten reputable citizens be filed and that the deadline be changed from ten days to twenty days. *See id.* In 1969, the deadline provision was reenacted as part of a reorganization of the Election Code. *See* Act 465 of 1969, 1969 Ark. Acts 1195. The substance of the deadline provision was unchanged. *See id.* art. 10 § 1 (codified at Ark. Stat. Ann. § 3-1001 (Supp. 1969)). The statute was later codified in its present form as § 7-5-801. This legislative history is persuasive proof of the fact that the timeliness of election-contest complaints has been an ongoing concern of the General Assembly since at least 1917 and that the verification of the alleged facts has been a mandated component of election-contest complaints.

 The General Assembly has also made it abundantly clear that the concern for timely resolution of election contests is not unique to the filing of the complaint but that expedited deadlines and consideration of election contests permeate the Election Code. *See* Ark. Code Ann. § 7-5-801(e) (Repl. 2000) (response due within twenty days of the complaint being filed); Ark. Code Ann. § 7-5-810 (Repl. 2000) (seven-day time period for filing an appeal); Ark. Code Ann. § 7-5-802 (Repl. 2000) (requiring the circuit court to "proceed at once" with election cases); Ark. Code Ann. § 7-5-804 (Repl. 2000) (stating it is the duty of the Supreme Court to advance election cases). Nothing in the record or abstract indicates that Mr. Willis ever moved this court to expedite this appeal, which explains why this appeal is being considered in February of 2003 rather than in a more expedited manner. While it is the duty of this court to advance appeals of election contests, it is incumbent on the contestants to bring the matter to this court's attention by motion. *See* Ark. Sup. Ct. R. 6-1(b) ("[T]hat the pleader shall inform the Clerk's office of the need for an emergency or accelerated hearing by the Court."). *Cf. Dean v. Williams*, 339 Ark. 263, 264, 5 S.W.3d 37, 38 (1999) (per curiam) ("[I]n expediting this case we can promptly decide the . . . pressing issues *that have been brought to our attention.*") (emphasis supplied). That was not done.

In interpreting § 7-5-801, this court has written that the purpose of the statute is to "furnish a summary remedy and to secure a speedy trial." *McCastlain*, 340 Ark. at 368, 10 S.W.3d at 836 (quoting *Gower*, 173 Ark. at 122, 292 S.W. at 383). We have further emphasized that the Election Code was designed to resolve election disputes expeditiously and to avoid election-contest "fishing expeditions." *McCastlain*, 340 Ark. at 369, 10 S.W.3d at 837 (quoting *Cartwright v. Carney*, 286 Ark. 121, 690 S.W.2d 716 (1985)).

It is patently clear to this court that Mr. Willis failed to comply with the plain terms of § 7-5-801(d). The unambiguous text of the statute, the legislative history, and our common law foreclose any construction of § 7-5-801(d) that would allow "substantial compliance" to be our standard of review.

Mr Willis relies on his theory of public policy, but, in point of fact, Mr. Willis's standard of substantial compliance would create movable deadlines based on the inexact criterion of lack of prejudice. This runs directly contrary to our announced goal and the legislature's enacted public policy of resolving election contests expeditiously and summarily.

We also observe that Mr. Willis's cited authority, *McCastlain v. Elmore, supra*, has no pertinence to the proposition he advances. The question presented in *McCastlain* was whether the savings statute applied to election cases. The *McCastlain* court held that it did not, and we specifically declined to address the sufficiency of the plaintiff's *jurat*. *See McCastlain*, 340 Ark. at 368, 10 S.W.3d at 836 ("Because we find merit in Ms. McCastlain's first assertion of error [the savings statute question], we need not address her second argument [sufficiency of the *jurat*].". Mr. Willis argues that the trial court in *McCastlain* concluded that the language of the *jurat* was specific enough to satisfy the verification requirement and contends that the language of his verification is much more specific than that of the *McCastlain* plaintiffs. But a decision on the language of the *jurat* by a *trial court* in another case has no precedential value for this court's decision on timeliness.

As a final point, we turn to the venerable case of *Logan v. Russell*, 136 Ark. 217, 206 S.W. 131 (1918). In *Logan*, the parties were rival candidates for the Democratic nomination to

the position of county clerk. Logan lost and filed a complaint contesting the election. We said in our rendition of the facts: "The complaint and the accompanying statement of the ten citizens were filed in the office of the clerk of the court within ten days after the result of the primary election was duly certified, but the statement of said citizens was not sworn to until after the expiration of that time." *Logan*, 136 Ark. at 219, 206 S.W. at 131. The defendant demurred, and the trial court granted the demurrer. We upheld the trial court's decision:

> "There is, we think, no escape from the conclusion that the language of the statute with reference to time of filing the complaint is mandatory, and not merely directory, and that the same requirement applies to the accompanying affidavits. The plain purpose of the framers of the statute was to require expedition in the commencement and preparation of contests of primary elections, and we do not feel at liberty to disregard the language of the statute or lessen its binding effect by declaring it to be merely directory."

*Id.* at 221-222, 206 S.W. at 132-133. The *Logan* decision is on all fours with the case at hand. We decline the invitation by Mr. Willis to adopt a new standard and to depart from our abundant case law on this point. The circuit court was without subject-matter jurisdiction to hear Mr. Willis's complaint.

Affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. The majority opinion has correctly followed this court's precedent in affirming the trial court's dismissal of Mr. Arnell Willis's election-contest complaint. The majority opinion reviews election-contest cases that emphasize that the Election Code was designed to resolve election disputes expeditiously. For these reasons, I am compelled to join the majority's decision.

What disturbs me are the serious allegations made by Mr. Willis, but, as the result of a procedural bar, he will be unable to offer proof as to their validity. Mr. Willis has alleged that illegal and fraudulent votes were cast for his opponent, Barbara King. He specified the names of persons who voted twice, persons who

voted, although they were not registered, and persons who were involved in fraudulent absentee voting. Mr. Willis will not be able to prove these charges in this election-contest proceeding. However, I point out that, while Mr. Willis may not now present his case, the Phillips County Clerk, Linda White, in her answer to Willis's complaint, admitted that, according to her records, the persons listed in paragraph 6 of the complaint may have voted twice.[1] She also admitted that the ten persons listed in the complaint had voted without being registered. The three Phillips County Board of Election Commissioners made the same admissions. When there are serious allegations of election irregularities and fraud, there should be a remedy available (in addition to a candidate's election-contest procedures) to investigate and determine if such charges are valid. Too often election contests by candidates are lost due to expedited, complex rules that make up our Election Code. While the Code contains penalties for misdemeanor and felony election offenses, Ark. Code Ann. §§ 7-1-103 and 7-1-104 (Supp. 2001), respectively, such violations are commonly not investigated or charged. The General Assembly should address this problem and provide a remedy that is not burdened with time constraints almost impossible to meet.

The Election Code does provide a remedy set out in Ark. Code Ann. § 7-5-807(a) (Repl. 2000), whereby ten reputable citizens of any county may file a complaint in circuit court within twenty days after the election, alleging that illegal or fraudulent votes were cast. The circuit court judge, if in his opinion there is good ground to believe the charges to be true, shall convene a grand jury. Although the time limitation of twenty days after the election may be too short, the General Assembly could rectify that problem by lengthening the filing deadline and making other revisions which would make the law more effective and available to the voters. Allegations such as the ones being sworn to here should be resolved so that Arkansas voters can be assured that their elections are honest, but, when not, the voters are availed a remedy by which they can root out illegal and fraudulent voting practices.

---

[1] Ms. White denied that she did not determine whether the persons voted twice.