Vernon KINCHEN *v.* Michael E. WILKINS

05-1402 238 S.W.3d 94

Supreme Court of Arkansas
Opinion delivered June 29, 2006

*Michael S. Robbins, P.A.*, by: *Michael S. Robbins*, for appellant.

*Peel Law Firm, P.A.*, by: *John R. Peel*, for appellee.

DONALD L. CORBIN, Justice. Appellant Vernon Kinchen appeals an order of the Pope County Circuit Court granting Appellee Michael Wilkins's request for declaratory relief and enjoining a special election. On appeal, Kinchen argues that: (1) the text of the city ordinance that he submitted constituted a legally sufficient ballot title; (2) the inclusion of the incorrect city ordinance number did not render the referendum petition insufficient; (3) the Pope County Election Commission had no discretion to vary the language of the proposed ballot title; (4) the official ballot prepared by the Commission was legally insufficient; and (5) the trial court erred in permanently enjoining the Commission from holding an election upon the referendum petition. As this case pertains to election procedures, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(4). We affirm.

The facts underlying this case are as follows. Wilkins is a real estate developer who petitioned the City of Russellville to rezone certain property located at 2134 Marina Road from R-1 residential zoning to a planned unit development. The rezoning would allow Wilkins to construct fifteen condominiums on the property. As a result of Wilkins's request, the City of Russellville passed Ordinance No. 1866, rezoning the Marina Road property to allow for planned unit developments.

Kinchen, who was opposed to the rezoning, began circulating a petition for referendum seeking to refer Ordinance No. 1866 to the citizens of Russellville for a vote on or before the biennial regular election occurring on November 7, 2006.[1] After obtaining 1,569 signatures, Kinchen turned the petition in to Kathy Collins, Russellville City Clerk, so that she could verify the signatures as belonging to registered voters. Thereafter, Collins was able to duly certify 1,241 signatures, thereby ascertaining that enough signatures had been gathered to place the referred measure on the ballot for the November 7 General Election. Collins then notified Dale Brown, Chairman of the Commission, that the referendum petition had been certified.

The Russellville City Council decided to call a special election to refer Ordinance No. 1866 to the voters.[2] The special election was scheduled for October 11, 2005. In preparation for the upcoming election, the Commission began to prepare a ballot. Commissioner Brown contacted Michael Robbins, Kinchen's attorney, and informed him that neither a proposed ballot nor ballot title had been submitted with the documentation received from the City Clerk. Robbins informed Commissioner Brown that he would be glad to prepare a proposed ballot and subsequently forwarded a proposed ballot that contained the entire text of Ordinance No. 1866.

After receiving the proposed ballot, Commissioner Brown gave it to Commissioner Alex Streett so that he could review it. In doing so, Commissioner Streett determined that the petition circulated by Kinchen erroneously referred to Ordinance No. 1886, rather than Ordinance No. 1866. Commissioner Streett,

---

[1] The petitions circulated contained a verbatim copy of the text of the ordinance but mistakenly referred to the ordinance as No. 1886.

[2] The special election was passed through Ordinance No. 1880 and referred to the incorrect Ordinance No. 1886 as being the subject of the special election.

who was also concerned that no ballot title had been submitted, contacted Tim Humphries, an attorney with the Arkansas Secretary of State's office, to seek advice on the propriety of the proposed ballot. Humphries told Commissioner Streett that the reference to the incorrect ordinance number was not a fatal defect that would prevent the matter from going to the voters. As to the issue of the ballot title, Humphries told Commissioner Streett that he had no authority to prepare a ballot title and that he was restricted to the language contained in the petition. Humphries then suggested that the Commission use the title of the ordinance itself as the ballot title, which the Commission did.

On September 13, 2005, Wilkins filed suit seeking to enjoin the special election. In his complaint, Wilkins alleged that Kinchen failed to submit a ballot title to the Commission and that the ballot was insufficient due to the fact that the ballot title drafted by the Commission was nothing more than the title of Ordinance No. 1866. Kinchen filed a cross-claim against the Commissioners, in their official capacity, seeking to temporarily enjoin the special election until such time as the Commission prepared a proper ballot.

The trial court held a hearing on September 20, 2005. Both parties argued that the ballot title, as drafted by the Commission, was insufficient. Kinchen, however, argued that it was his intent that the text of the ordinance be used as the ballot title. Further, Kinchen argued that the trial court should require the Commission to postpone the election until such time as a sufficient ballot was prepared. At the conclusion of that hearing, the trial court ruled from the bench that it was granting Wilkins's petition and enjoining the special election. A written order memorializing that ruling was entered on September 27, 2005. From that order, comes the instant appeal.

As a threshold issue, this court must address Wilkins's claim that the instant appeal is moot. As a general rule, the appellate courts of this state will not review issues that are moot, because to do so would be to render an advisory opinion and this we will not do. *Allison v. Lee County Election Comm'n*, 359 Ark. 388, 198 S.W.3d 113 (2004). Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.* We have recognized two exceptions to the mootness doctrine. *Id.* The first exception involves issues that are capable of repetition, yet evading review,

and the second exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.*

In the recent case of *Watts v. Searcy County Board of Elections*, 364 Ark. 452, 220 S.W.3d 642 (2005), this court refused to address the merits of an appeal that involved an election that had already been held. In determining that the case was moot, this court concluded that the appellants failed to seek expedited consideration of the case. Additionally, the court held that the issues presented in the appeal did not raise considerations of substantial public interest that might prevent future litigation.

■ The instant action is distinguishable from the situation presented in *Watts*. It is true that the special election scheduled for October 11, 2005, has passed but the matter may still be presented for consideration in the next general election scheduled for November 7, 2006. Even though the trial court's order granted Wilkins's complaint for declaratory relief that requested both a temporary and permanent injunction, the order only enjoins the city clerk and the Commission from holding the special election. Because the issues presented in this case regarding the ballot title and its sufficiency may arise again, this court will address the merits of the present appeal.

Turning now to the merits of Kinchen's arguments, the first issue raised is whether the text of the city ordinance is a sufficient ballot title. Kinchen argues that it was his intent to use the text of Ordinance No. 1866 as the ballot title but because the city clerk failed to attach a copy of the ordinance to the materials she sent to the Commission after certifying the referendum petition, the Commission failed to properly use the text as the ballot title. In support of his argument, Kinchen avers that there is no prohibition against submitting the entire text of a particular measure as a ballot title as long as it satisfies the other requirements that a ballot title be intelligible, honest, and impartial. Kinchen's argument in this regard fails.

Ballot titles must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law. *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996); *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994); *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994). Ballot titles cannot omit material infor-

mation that would give the voter serious ground for reflection; they must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *May v. Daniels*, 359 Ark. 100, 194 S.W.3d 771 (2004).

It is axiomatic that the majority of voters will derive their information about a proposed measure from the ballot title immediately before exercising the right of suffrage. *Parker*, 326 Ark. 123, 930 S.W.2d 322. Thus, a ballot title must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Id.* Even in light of our liberal approach to determining the sufficiency of a ballot title, this court must consider whether information omitted from the ballot title is an essential fact which would give the voter serious ground for reflection on whether to vote for the measure. *Page v. McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994); *Bailey*, 318 Ark. 277, 884 S.W.2d 938. The ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *May*, 359 Ark. 100, 194 S.W.3d 771.

Although this court has never addressed the specific argument of whether the text of an ordinance would be a sufficient ballot title, in *Fletcher v. Bryant*, 243 Ark. 864, 422 S.W.2d 698 (1968), this court stated that a complete abstract of an act to be referred would be impracticable. *See also Coleman v. Sherrill*, 189 Ark. 843, 75 S.W.2d 248 (1934) (holding that a ballot title need not be so elaborate as to set forth the details of the act).

Regardless of whether the entire text of an ordinance can be properly submitted as a ballot title, as Wilkins points out, the ordinance itself fails to include relevant information that would allow the voter to make an informed decision. Specifically absent is any attempt to define the existing or proposed zoning designations contained in the ordinance. The ordinance refers to the current zoning as "R-1 residential use" and does not explain what a "planned unit development" is. Also absent from the ordinance is a description of where the affected property is located. The metes and bounds used in the ordinance will in no way enable a voter to ascertain the location of the affected property. Further, as Wilkins points out, the only differences in the current ordinance and all other rezoning ordinances used by the city are: (1) the

ordinance number; (2) the metes and bounds legal description of the property at issue; and (3) a reference to the zoning categories involved.

█ Accordingly, regardless of whether it is proper to use the entire ordinance as a ballot title, the ordinance itself does not sufficiently apprise the voter of information necessary to making an informed decision in the voting booth; thus, the text of Ordinance No. 1866 is an insufficient ballot title.

█ Next, Kinchen argues that the use of the wrong ordinance number in the referendum petition did not render it insufficient. Wilkins argues that the use of the wrong ordinance number is a fatal flaw because any voter who took the time in advance of the election to research the ordinance would be voting on the wrong issue. Although this issue was raised in the complaint filed by Wilkins, it appears from a review of the record that this specific argument was abandoned. At the hearing, the parties limited their argument to the issue regarding the use of the text of the ordinance as the ballot title. No argument was raised by either side regarding the reference of the wrong ordinance number and its effect on the referendum petition. Consequently, this point on appeal is procedurally barred as it was not raised below. *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005).

For his third point on appeal, Kinchen argues that the Commission had no authority to vary the language of the proposed ballot title that he submitted. Wilkins counters that Kinchen failed to submit a ballot title and because of that the Commission was required to create a ballot title utilizing the exact language of the ordinance itself.

Pursuant to Amendment 7 of the Arkansas Constitution, when a petition for a constitutional amendment is filed, the exact title to be used must be submitted by the petitioner with the petition filed with the Secretary of State and the State Board of Election Commissioners, who, in turn, certify the title to the Secretary of State. *See also Washburn v. Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956). Just as a ballot title must be submitted for a statewide referendum, so must one be submitted to a local election commission for a local referendum petition.

█ The problem in the instant case is that there was a disagreement over whether Kinchen submitted a ballot title at all. As previously stated, Kinchen claimed that he intended to use the

text of the ordinance as the ballot title. As this court has already determined, however, the text of Ordinance No. 1866 was not a legally sufficient ballot title. Thus, any action of the Commission in varying the ballot title had no impact on the sufficiency of the ballot title in this case, and Appellant's argument on this point is without merit.

■ As his fourth point on appeal, Kinchen argues that the proposed ballot prepared by the Commission is legally insufficient as it fails to convey any information upon which the voter can make an informed decision. This issue was raised by Kinchen in his cross-claim where he requested that the Commission be ordered to prepare a legally sufficient ballot title. A review of the record reveals that the trial court did not rule on Kinchen's cross-claim, and it remains outstanding. Thus, any ruling by this court on this argument would result in an improper advisory opinion. *See Allison*, 359 Ark. 388, 198 S.W.3d 113.

Finally, Kinchen argues that it was error for the trial court to permanently enjoin the Commission from holding an election upon the referendum petition.[3] Wilkins counters that the trial court's permanent injunction was proper because the time for filing the petition has passed and because the text of the ordinance cannot properly be used as a ballot title, the election must be permanently enjoined.

At the hearing, the following colloquy took place between the court and Wilkins's counsel:

> By The Court: Well I think, based on what I have seen here, there's — there are too many problems. I think both sides need to be able to have a fair determination of what the people want and in the situation it's in right now I don't think you can do that.

---

[3] The dissent opines that the trial court lacked authority to enjoin the October 11, 2005 special election because Ark. Code Ann. § 7-9-111(h)(1) (Supp. 2005) mandates that the referendum petition be submitted at the next regular general election. This issue was neither raised nor argued either to the trial court or this court and, as such, cannot form the basis for this court to reverse the order of the trial court. It is a well-settled principle of appellate law that we will not make a party's argument for him, nor raise an issue *sua sponte* unless it involves the jurisdiction of this court to hear the case. *See Arkansas Dep't of Human Servs. v. Schroder*, 353 Ark. 885, 122 S.W.3d 10 (2003); *Ilo v. State*, 350 Ark. 138, 85 S.W.3d 542 (2002); *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). Nor do we consider this issue involving section 7-9-111(h)(1) one of subject-matter jurisdiction that we can raise on our own.

So I am going to grant Plaintiff's petition. I assume that's what, injunctive relief?

BY MR. PEEL: Declaratory judgment and injunctive relief.

BY THE COURT: That the election be enjoined from going forward; that there are too many discrepancies and problems with the procedure that's been followed here and the fairness and the opportunity for people to know exactly on what they are voting on is obviously cloudy at this stage; and probably in the interest of everybody it's better that this matter not be presented to the voters at this time.

The written order subsequently entered in this case states as follows:

1. The Complaint for Declaratory Judgment and Injunction should be granted.

2. The Pope County Election Commission and the City Clerk for the City of Russellville be and hereby are enjoined from conducting the early voting, absentee voting or other voting relating to the special election to be held on October 11, 2005.

■ As previously stated, Kinchen's cross-claim is still pending. There has been no permanent injunction entered in this case. Accordingly, Kinchen's argument on this point is without merit.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. Speaking for myself, I have read the majority opinion, and I am confused as to how the court reached the decision to affirm this case. The correct result in this case is to reverse and dismiss this appeal for lack of jurisdiction. Hopefully, I can write in clear terms why I reach the result I have. Since I have no serious quarrel with the facts as set out in the majority opinion, I go directly to the law that decides this case.

The threshold issue in this election case is: When is the referendum petition, referring Ordinance No. 1866, to be legally submitted to the voters of Russellville? The Russellville City

Council called a special election to be held on October 11, 2005, for the voters to decide the issue, but the Council was clearly mistaken. The Pope County Board of Election Commissioners also erred when it proceeded to prepare a ballot for the October 11 special election.

At the outset, I point out that neither Wilkins, the Pope County Board of Election Commission, nor the City Council had the authority to set a special election on October 11, 2005. It is settled law that an election contest is a statutory or special proceeding under Ark. R. Civ. P. 81. *See Tate-Smith v. Cupples*, 355 Ark. 230, 134 S.W.3d 535 (2003); *Willis v. King*, 352 Ark. 55, 98 S.W.3d 427 (2003). I also note that neither Kinchen nor Wilkins mentions or cites any of Arkansas's applicable statutes that govern how our state and its cities and counties conduct elections and prescribe the means by which voters can reject or approve petitions for initiatives and referenda. *See, e.g.,* Ark. Code Ann. §§ 7-9-101 *et seq.* (Repl. 2000) and (Supp. 2005). For example, Ark. Code Ann. § 7-9-105(a) (Supp. 2005) provides a form for a petition and order of referendum, which an interested voter can circulate for legal electors to sign in order to have the ordinance or measure placed on the ballot. Of particular relevance to the case now before us, § 7-9-105(a) provides that an ordinance referred to the people of a municipality may be approved or rejected by the vote of the legal voters of the municipality at the "biennial (or annual, as the case may be, if a city ordinance) regular general election (or at a special election, as the case may be)[.]"

The statute which controls the setting of an election for voters to decide the referring of a municipal measure — like Ordinance No. 1866 — is provided in Ark. Code Ann. § 7-9-111(h)(1) (Supp. 2005), which reads as follows:

> Municipal referendum petition measures *shall be submitted to the electors at a regular general election unless the petition expressly calls for a special election.* If the date set by the petition does not allow sufficient time to comply with election procedures, then the city or town council shall fix the date for any special election on the referendum measure. The date of any special election shall not be more than one hundred twenty (120) calendar days after the date of certification of sufficiency by the municipal clerk.

(Emphasis added.)

Under § 7-9-111(h)(1) the Kinchen petition and order established that the City's referendum election was to be voted on

at the November 7, 2006, General Election, and not an October 11, 2005, special election as was called here. As discussed above, § 7-9-111(h)(1) mandates that referendum petition measures *shall be submitted* to the electors *at a regular general election unless the petition expressly calls for a special election*. Again, under the undisputed facts before this court, the voters' petition did not call for or order a special election; consequently, this referendum, by statutory law, must have been placed on the ballot at the next regular general election on November 7, 2006, the date plainly established by the Kinchen petition.

Arkansas provides that an election held without statutory authority is a nullity, and authority to hold an election at one time will not warrant an election at another. *Langston v. Johnson*, 255 Ark. 933, 504 S.W.2d 349 (1974). In *Reed v. Baker*, 254 Ark. 631, 495 S.W.2d 849 (1973), this court said that the procedure for contesting an election is purely statutory, and *a strict observance of statutory requirements is essential to the exercise of jurisdiction by the court*, as it is desirable that elections have a degree of stability and finality. (Emphasis added.) Based on this reasoning alone, the City Council and the trial court had neither authority nor jurisdiction to call the October 11, 2005, special election. Rather, only the petitioners had that authority, under § 7-9-111(h)(1), to decide whether their referendum issue would be presented to the voters at a special election or the next regular scheduled general election,[1] and the petitioners chose the November 7, 2006, General Election as the date the City referendum in issue must be presented to the Russellville voters. Because the trial court lacked jurisdiction, this court also lacks jurisdiction. *See Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995). Thus, the issue *does* involve this court's jurisdiction, and the majority is wrong to state in a footnote that the court can neither raise nor address these issues *sua sponte*.[2]

---

[1] I note that, under our rules, statutes and case law, injunctive relief is not the relief one seeks to set aside an illegally called special election. Instead, a party's relief is mandamus coupled with declaratory judgment. *See State v. Craighead County Board of Election Commissioners*, 300 Ark. 405, 779 S.W.2d 169 (1989) and its progeny. Since the trial court had no authority to decide this case for the above jurisdictional reasons, one need not discuss why injunctive relief is no longer the remedy in election matters.

[2] The majority declares, without argument or citation to authority, that Ark. Code Ann. § 7-9-111(h)(1) does not present a question of subject-matter jurisdiction. As discussed above, our election statutes require strict compliance in order for our courts to *exercise jurisdiction* over election matters, and the trial court in this case *did not have the jurisdiction* to

Instead of dismissing this case because the City illegally called a special election, the majority court merely affirmed the trial court by granting Wilkins's request for declaratory judgment and injunction and enjoined the Election Commission and City Clerk from conducting earlier voting, absentee voting or other voting relating to the October 11, 2005, special election. Neither the Election Commission, Wilkins, nor Kinchen mentioned that the referendum on Ordinance No. 1866 would be held on November 7, 2005. Of course, at this point, the unlawfully scheduled October 11, 2005 election is a nullity, yet this court continues its review of other election issues as though the special election were valid. In fact, the November 7, 2006, election was hardly mentioned in this appeal or at the trial below. Because our court has dealt with some petition and ballot title issues but not others that could arise before the November 7 General Election, I will touch on a few of those issues now, as we near the November 7 General Election.

For example, Wilkins argues, among other things, that the petitioners' use of the wrong ordinance number — number 1886 instead of 1866 — in their referendum, in conjuction with the failure to supply a ballot title, made the petition legally insufficient. However, Ark. Code Ann. § 7-9-106(b) (Repl. 2000) requires that, to every petition for referendum shall be attached a full and correct copy of the measure (or in this case, the ordinance). In *Westbrook v. McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931), this court discussed the purpose of this requirement that a copy of the measure be attached to the petition when it is circulated. The court reasoned that the purpose of § 7-9-106(b) was to inform the petitioner "as to the exact provision of the measure sought to be referred." *Westbrook*, 184 Ark. at 745, 43 S.W.2d at 359 (citing *Townsend v. McDonald*, 184 Ark. 273, 42 S.W.2d 410 (1931)). The proposed measure in *Westbrook* had been misnumbered 71, not 80, and it was approved on February 26, 1931, not on March 2, 1931. However, this court concluded that such misnumbering was a clerical misprision — an error that should not have occurred, but

---

order a special election. I am at a loss to understand how the majority can conclude that a question pertaining to this court's jurisdiction cannot be raised *sua sponte*. It is, after all, not only the right but the duty of this court to determine whether there is jurisdiction of the subject matter. *See In re: Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995); *Viswanathan v. Mississippi County Community College Bd. of Trustees*, 318 Ark. 80, 887 S.W.2d (1994).

that was not fatal to the validity of the petition. The court concluded as follows:

> *The purpose of stating the number of the act and the date of its approval was to aid in its identification, but these errors could not have been misleading when an exact copy of the act otherwise appeared on the petition.* It is settled law that even the title of an act is not controlling in its construction, although it is considered in determining its meaning when such meaning is otherwise in doubt.

*Id.* at 746, 43 S.W.2d at 359 (emphasis added). *See also Kyzar v. City of West Memphis*, 360 Ark. 454, 201 S.W.3d 923 (2005). I believe the rationale formed in *Westbrook* is applicable and controlling law here.

Next, I think this court should consider Wilkins's contention that the central question to be resolved by the court in a ballot title case is whether, in the voting booth, the voter is able to reach an intelligent and informed decision for or against the proposal and to understand the consequences of his or her vote based on the ballot title itself. In making this argument, Wilkins relies on cases where this court discussed ballot titles; however, those cases apply only to *initiated* proposals under Amendment 7 to the Arkansas Constitution. *See Chaney v. Bryant*, 259 Ark. 294, 532 S.W.2d 741 (1976); *see also Theil v. Priest*, 342 Ark. 293, 28 S.W.3d 296 (2000). I am unaware of any statute or case where the sponsors of a referendum of any city or county ordinance were (or are) required to place a ballot title or popular name on the referendum.[3]

Clearly, no statute or constitutional provision in Amendment 7 authorizes the County Board of Election Commissioners or other officials to modify or approve a ballot title for a county or city referendum prior to placing the question to the vote of the city electors.

---

[3] It is noteworthy to mention the majority opinion which, without citation or argument, states that, just as a ballot title must be submitted for a statewide referendum, so must one be submitted to a local election commission for a local referendum petition. As seen in the *Chaney* case, the majority opinion is wrong. Furthermore, there is good reason why ballot titles are not required for a referendum, since the referral is from a measure enacted by a legislative body. Other reasons exist for not requiring ballot titles for referendums of city measures — (1) who is legally going to approve the ballot, not the Attorney General as is provided under Ark. Code Ann. § 7-9-107 (Repl. 2000); and (2) local voters have easier access to obtain information relating to the measure in question.

In conclusion, because I believe the October 11, 2005, special election was illegally called and a nullity, I would dismiss the case, leaving the parties to sort through what issues still might need to be addressed when the 1866 referendum comes to a vote at the November 7, 2006, General Election.