Josh SANFORD *v.* Tim MURDOCH

08-265                                                          285 S.W.3d 620

Supreme Court of Arkansas
Opinion delivered June 19, 2008

Appellant, pro se.

Appellee, pro se.

ROBERT L. BROWN, Justice. Appellant Josh Sanford, an attorney with the Sanford Law Firm, PLLC, of Russellville, appeals from an order of the circuit court, ordering him to pay $2,492.11 in attorney-ad-litem fees to Timothy W. Murdoch, an attorney-ad-litem appointed for Marilyn Martin, who was Sanford's former client. We affirm the circuit court's order.

Since 2004, Sanford had represented and advised Martin in a variety of legal matters, including the planning of her estate.[1] As such, documents relevant to her financial and estate planning were in Sanford's possession. Included in these documents was Martin's Last Will and Testament, executed on November 21, 2002, which left all of her property to the Marilyn Ann Martin Living Trust, also executed on November 21, 2002. Upon the death of the settlor of the trust, the trust estate would go to Martin's mother, Emily Echols, if living, for whom Martin was the guardian and caregiver, and then to the S.P.C.A. No-Kill Center in Las Vegas, Nevada. The Living Trust was amended on July 2, 2004, naming Marilyn Martin as trustee and two friends as successor trustees.

In June of 2007, Martin first reported to her primary care physicians in Russellville that she was having difficulty concentrating and expressing herself and was suffering from memory lapses. Soon thereafter, Martin was diagnosed with a malignant brain tumor, and her communication, comprehension, and memory problems continued to worsen. Martin, however, decided to forego medical treatment and seek hospice care.

---

[1] Many of the facts in this case are gleaned from the attorney-ad-litem report prepared by Timothy W. Murdoch.

On August 17, 2007, Sanford was granted a durable power of attorney by Martin to handle her affairs. The following day, the Martin Living Trust was amended, naming Sanford as trustee upon the death or incapacity of the settlor, and providing for the trustee to hold the entire estate for the benefit of Emily Echols upon the death of the settlor.[2] Upon the death of Emily Echols, ten percent of the estate would go to the S.P.C.A. No-Kill Center and the remaining ninety percent would be divided equally between two friends.

Sometime after Martin's diagnosis, Martin's niece, June Morgan, and her husband, Robert, traveled to Arkansas from California to visit Martin. On August 25, 2007, Martin revoked Sanford's power of attorney and granted a durable power of attorney to Morgan. Martin then executed a new Last Will and Testament on August 31, 2007, in California, leaving her entire estate to Morgan.[3] Morgan then requested that Sanford deliver the financial and estate-planning documents in his possession to her. Sanford refused and contested Martin's competency at the time his power of attorney was revoked.

On September 13, 2007, Morgan, through local counsel, filed a Petition for Ante-Mortem Probate and for Ex-Parte Relief. The petition requested that the circuit court declare Martin's August 31, 2007 will valid and effective and order Sanford to produce the documents in question. On September 20, 2007, the circuit court entered an order appointing Timothy W. Murdoch as attorney-ad-litem for Martin for the purpose of determining her mental competency. At the same time, the circuit court ordered Sanford to provide Murdoch with all documents in his possession belonging to Martin and also ordered Morgan to provide Murdoch with Martin's medical records so that Murdoch could determine whether Martin was competent to receive her financial and estate planning documents.

On October 1, 2007, Sanford filed a motion to dismiss Morgan's Petition for Ante-Mortem Probate and argued that because Martin had moved to California with Morgan, the circuit court did not have jurisdiction to determine the validity of the

---

[2] Presumably, this amendment was made by Sanford under the durable power of attorney, but the record before us does not specifically show this.

[3] It appears the new will, according to the ad-litem report, was executed in California, but, again, the record before us is inconclusive on this point.

will. On October 6, 2007, Martin died in California. Her mother, Emily Echols, continued to live near Russellville.

On October 11, 2007, Murdoch filed an ad-litem report in which he ultimately concluded that the financial and estate-planning documents should be returned to Martin's estate and that Martin was competent when she revoked Sanford's power of attorney and executed the new will. In his report, Murdoch stated that after interviewing both lay witnesses and Martin's physicians, he observed that the lay testimony was somewhat at odds with the medical testimony. Several lay witnesses believed that Martin "did not know what was going on" by late August of 2007. Martin's physicians, on the other hand, and specifically Dr. Michael Kaploe, Martin's primary care physician, indicated that though Martin was aphasic, she was "still decisional" and had no problems under-standing matters during an August 27, 2007 clinic visit. Murdoch gave considerable weight to Dr. Kaploe's opinion, as Dr. Kaploe had been Martin's primary care physician for several years, and Murdoch believed that Dr. Kaploe was in the best position to determine Martin's cognitive status.

On October 25, 2007, the circuit court conducted a hearing with Sanford and Murdoch present, at which time Sanford told the court that he had no objection to attorney-ad-litem fees being paid to Murdoch. The issue as to who would pay the fees was not discussed. Murdoch was orally discharged as attorney-ad-litem by the circuit court at the same hearing.

On October 29, 2007, Murdoch filed a motion for payment of fees for his ad-litem work. Morgan responded that Sanford should be ordered to pay Murdoch's attorney's fees because his refusal to produce Martin's financial and estate-planning docu-ments and his questioning of her mental competency necessitated the need for an attorney-ad-litem. Sanford replied that Martin's estate was the proper party to bear the expense of Murdoch's ad-litem work, as there was no legal authority for the circuit court to assess the fees against any party other than Martin's estate.

On October 30, 2007, the circuit court entered an order, ruling that based on Murdoch's ad-litem report, Morgan was entitled to possession of all of Martin's property. The circuit court also directed Murdoch to provide the court with a Verified Fee Petition. On November 7, 2007, the circuit court ordered Sanford to pay Murdoch's ad-litem fee in the amount of $2,492.11. Sanford then filed an objection to that order and contended that

there was no statutory basis for an assessment for other ad-litem work under these circumstances in a probate proceeding. In addition, Sanford argued that the circuit court lacked authority to appoint an attorney-ad-litem for Martin, and even if there was authority to do so, the circuit court failed to make a determination that Martin was incompetent first, as required by statute. As a final point, Sanford claimed that the circuit court violated Arkansas Code Annotated § 28-1-112 (Repl. 2004), when it appointed an attorney-ad-litem without notice, without a hearing, and without adequate time to respond to the underlying petition.[4]

Sanford first urges in this appeal that a circuit court does not have the authority to appoint an attorney-ad-litem in an ante-mortem probate case or in a replevin case, because the appointment of an attorney-ad-litem is limited to those types of cases identified by law, and there is no authority in the Ante-Mortem Probate Act or any of the replevin statutes that allows for the appointment of an attorney-ad-litem. Sanford insists that in order to appoint an attorney-ad-litem, there must be statutory authority to do so. In the alternative, Sanford contends that even if the circuit court had the authority to appoint an attorney-ad-litem in this case, the circuit court erred by not first making a determination that Martin was incompetent. Sanford asserts that a circuit court is generally prohibited by statute from appointing an attorney-ad-litem unless there is an unrepresented interest, inadequate representation, or the potential client is incompetent. He maintains that Murdoch was appointed as Martin's attorney-ad-litem without a finding that Martin was incompetent, which is made clear by the fact that Murdoch was appointed for the purpose of determining Martin's competency. Thus, Sanford insists that the decision appointing an attorney-ad-litem in this case was in error and should be reversed.

Murdoch responds as the only named appellee and asserts that he does not take a position on Sanford's arguments.

The standard of review in probate proceedings is clear:

> This court reviews probate proceedings *de novo* on the record, but it will not reverse the decision of the circuit court unless it is clearly

---

[4] The facts of this case, as taken from the record, are sparse, as none of Martin's estate and financial planning documents were included in the record. The current status of the Martin Living Trust and Emily Echols is unclear from the record.

erroneous. *Bullock v. Barnes*, 366 Ark. 444, 236 S.W.3d 498 (2006); *Craig v. Carrigo*, 353 Ark. 761, 121 S.W.3d 154 (2003). In conducting our review, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Bullock, supra.*

*Seymour v. Biehslich*, 371 Ark. 359, 361, 266 S.W.3d 722, 725 (2007). Probate orders may be appealed during the course of a probate administration regardless of whether the estate has been closed. *See* Ark. Code Ann. § 28-1-116 (Repl. 2004).

As an initial matter, this court must determine whether Sanford's argument regarding court authority to appoint Murdoch as attorney-ad-litem is moot. *See Honeycutt v. Foster*, 371 Ark. 545, 268 S.W.3d 875 (2007). As a general rule, appellate courts of this state will not review moot issues, as doing so would be to render an advisory opinion, which this court will not do. *See Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006). This court has said that "a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy." *Id.* at 74, 238 S.W.3d at 97. Nevertheless, this court recognizes two exceptions to the mootness doctrine: (1) issues that are capable of repetition, yet evading review and (2) issues that raise considerations of substantial public interest which, if addressed, might prevent future litigation. *See Kinchen, supra.*

In the case at hand, we hold that Sanford's argument on this point is moot. Murdoch was appointed as Martin's attorney-ad-litem, and an ad-litem report was filed, finding that Martin was competent during the time period in dispute and was entitled to the documents in question. The circuit court ordered the documents returned, and the financial and estate-planning documents once in Sanford's possession have now been provided to Morgan. Before the ad-litem report was even filed, Martin moved to California where she passed away soon after on October 6, 2007. Murdoch was then discharged as attorney-ad-litem on October 25, 2007.

Based on these facts, even if this court were to hold that the circuit court erred by appointing an attorney-ad-litem for Martin, the judgment would have no effect on the controversy. The attorney-ad-litem's work is over and cannot be undone, and the underlying dispute regarding Martin's competency has been resolved and the documents returned. Moreover, this issue does not

fall within either of the two exceptions to the mootness doctrine. Therefore, Sanford's first point on appeal is moot and will not be addressed by this court. Similarly, we conclude that a ruling by this court on whether the circuit court erred by appointing an attorney-ad-litem without notice, a hearing, and adequate time to respond would have no practical effect on the controversy and would be purely advisory. Thus, we hold that the issue raised by Sanford regarding violation of his due-process rights is also moot, and we will not address it.

▉ We next turn to Sanford's contention that the circuit court erred by assessing Murdoch's ad-litem fee against him, which is a distinct and separate issue from the circuit court's authority to appoint an attorney-ad-litem in the first place. He claims that ad-litem fees may only be awarded when expressly authorized by statute and that neither the Ante-Mortem Probate Act nor the replevin statutes authorize the award of attorney-ad-litem fees. He insists that Murdoch's ad-litem fee should be paid by Martin's estate, because Murdoch was appointed to represent Martin's interest. As noted above, Murdoch is the only appellee to file an appellate brief, and he states that he does not take a position on Sanford's arguments.

Sanford's argument on the fee point consists of a mere two paragraphs. He cites to one case for the proposition that attorney's fees may only be awarded when expressly authorized by statute, and he points out that the Ante-Mortem Probate Act and this state's replevin statutes do not grant a circuit court the authority to award attorney-ad-litem fees. Based on this, he concludes that Murdoch's ad-litem fee should have been assessed only against Martin's estate, but he cites no authority for this proposition. Nor does he cite this court to authority for the proposition that an attorney-ad-litem's fee is the equivalent of an award of attorney's fees in a contested matter or authority demonstrating to this court how an attorney-ad-litem in similar probate situations is usually paid in connection with a contested issue. Moreover, he does not assert that Murdoch's role was that of a master or fact-finder and that his fee for services is more in the nature of a necessary expense incurred by the estate. In short, this point is not sufficiently developed by Sanford for appellate review, and this court will not do the research on appellant's behalf. This court has repeatedly said that it will not consider an assertion of error if the appellant makes no convincing argument or cites no legal authority to support it, unless it is apparent without further research that the argument is

well taken. *See Hendrix v. Black*, 373 Ark. 266, 283 S.W.3d 590 (2008); *Chiodini v. Lock*, 373 Ark. 88, 281 S.W.3d 728 (2008); *Thomas v. Avant*, 370 Ark. 377, 260 S.W.3d 266 (2007); *Wilson v. Weiss*, 370 Ark. 205, 258 S.W.3d 351 (2007).

We note, in addition, that the appointment of the attorney-ad-litem was precipitated by Sanford's challenge to Martin's competency. We further observe that Sanford specifically told the circuit court during an October 25, 2007 hearing, at which Murdoch was present, that he had no objection to ad-litem fees being paid to Murdoch but only objected subsequently when the court ordered him to pay the fees. Hence, it appears he conceded that the court had the authority to assess ad-litem fees in this case but only contests the fact that he should pay them. Again, he presents this court with no case law or persuasive argument on why this should be the case. *See Hendrix, supra.* Accordingly, we find no abuse of discretion by the circuit court, and we affirm.

Affirmed.